EVERETT CLAPP *v.* GRACE C. MESEROLE.

The doctrine of extinguishment by judgment, has no application where the judgment is not against the principal debtor, but against one collaterally liable. In such case, there must be both judgment and satisfaction to affect the principal debt.

An administrator *de bonis non* can maintain an action against the representatives of a deceased executor, who died without applying the assets which had come to his hands.

Where legacies have been bequeathed to several legatees, and the executor has committed a devastavit, the estate is to be considered the principal debtor, and is not to be discharged from such legacies except by payment, and any judgment against the executor for such legacy, is to be deemed as collateral and auxiliary merely; not as affecting the principal debt.

APPEAL from a judgment of the Supreme Court affirming a decree of the surrogate of Kings county, made upon the final accounting of the appellant, Clapp, as the administrator with the will annexed of Simon Richardson, deceased. The decree, besides adjusting the accounts of the appellant as administrator, orders distribution of the sum of $8,809.26 found to be in his hands unadministered among certain of the legatees under the will of the deceased, and the question presented relates chiefly to the principles upon which the distribution was made. The testator died in the year 1850, leaving a widow, two sons and three daughters, several grandchildren, the children of a deceased daughter, and another grandchild, the daughter of a deceased son. To the last-mentioned grandchild he gave a legacy of $2,000, which has been paid, and respecting that there is not now any question. To his widow he gave one-third of his personal estate and the income for life of one-third of his real estate. She died before the present controversy arose, and there is no question arising upon the provision made for her. He gave one-sixth part of the residue of his personal estate to each of his five surviving children, and the remaining sixth part to his executors in trust for the children of his deceased daughter, that share to be equally divided between those children. He devised his real estate to his executors in trust to receive the

36

rents and profits until they should sell the same, and gave them a power to sell. The rents and profits while the real estate remained unsold, except the one-third given to the widow, and the proceeds of the sales, when made, were to be divided among his children and grandchildren in the same proportion as the residue of his personal estate as above mentioned. He recited that he had made advances to three of his children, namely, to his two surviving sons, William and Stephen, $10,000 each; to his deceased daughter, Mrs. Lewis, in her lifetime, $1,300; and to one of his surviving daughters, Grace, $1,100. He directed that these advancements should be added to the sums composing the amount to be divided, and that the aggregate should be distributed in the proportions above mentioned, but a deduction was to be made from the shares of those to whom advancements had been made of the sums advanced to them respectively. The testator's wife, his sons, William and Stephen, and his brother, Marvin, were appointed executrix and executors. The sons alone appear to have acted, and no question arises as to the other persons appointed. Letters testamentary were issued to his sons in the year 1850 and they took possession of the estate and undertook to execute the trusts of the will.

In May, 1856, they sold and disposed of the interest they had in the estate as legatees and devisees under the will to certain persons, under whom the appellant acquired title to their interest by a subsequent purchase. Being thus possessed of their rights as legatees and devisees, he cited them to account as executors before the surrogate. One of them, Stephen F. Richardson, petitioned for a final settlement as executors and trustees pursuant to the statute, and the proper citation having been issued, and the parties having been heard, the accounts of the two executors were settled and allowed, and the decree for distribution was made. The sum to be distributed was found to be $55,327.26. It embraced the advances mentioned in the will as having been made by the testator to four of the legatees, and it, moreover, embraced a sum of $8,281.23, for an indebtedness of the

two executors to the estate, for a deficiency arising upon the sale of certain premises which they had mortgaged to the testator in his lifetime to secure a debt which they owed him. Taking this aggregate as the amount to be divided, each one of the six shares mentioned in the will amounted to $9,221.21. The surrogate proceeded to adjust the claims of each of the legatees and devises, several of whom had received from the executors payments on account of their shares.

Stephen F. Richardson and William S. Richardson, being each chargeable with $10,000 as advances, were not awarded anything as beneficiaries under the will. They were ordered to pay each of the three daughters the following sums, being the ballances of the shares of said daughters after deducting the advances made to such of them as had been advanced and the payments made to them by the executors, viz.: to Grace C. Meserole, $3,520.81; to Jane A. Richardson, $2,361.21; and to Clementine Richardson, $7,627.36, and to the children of Mrs. Lewis, the deceased's daughter, several sums amounting to $7,021.21, being the balance of the sixth share, which sum, deducting amounts which the executors' had paid to some of them, was properly distributed among these grandchildren. This decree was made on the 1st day of June, 1861.

Pending the proceedings on the accounting which resulted in that decree, and on the 14th of October, 1859, the said Stephen F. and William S. Richardson were, by an order of the surrogate of Kings county, removed from their office as executors, and on the 30th of December following, the appellant was appointed administrator with the will annexed of the goods of the deceased unadministered. The accounting proceeded and the decree for distribution was made notwithstanding this change. The appellant entered upon the administration.

On the 31st July, 1861, he applied to the surrogate of Kings county for a final settlement of his accounts, and a citation was accordingly issued and served upon all the parties interested. The decree made upon that application was

the one from which the appeal in this case was taken. It appeared on the hearing from the administrator's return, and otherwise that the only assets which had come into the hands of the appellant, as administrator, was the sum of fifteen thousand seven hundred dollars realized upon the sale of certain mortgaged premises, under a mortgage which belonged to the estate; and, that after deducting certain expenses, and commissions, there came to the hands of the appellant to be administered the sum of $14,031.72. This was further reduced, by the retaining of a considerable sum for a disputed claim, and other sums for admitted debts, and about seven hundred dollars for counsel fees to $8,809.26, which belonged to the beneficiaries under the will and their assigns, or to some of them.

It was not claimed that the former executors, Stephen F. and William S. Richardson had paid the several amounts directed to be paid by them by the former decree.

The surrogate determined upon the present application, that the appellant, as the owner of the shares, which had belonged to S. F. and W. S. Richardson, was not entitled to any portion of the sum to be now distributed. He showed, by a statement contained in the decree, that the shares of each of the persons were liable to a deduction of $10,000 on advances under the provisions of the will, for one-half of the deficiency on the sale of the mortgaged premises above mentioned, and for one-half of the sum adjudged by the former decrees to be paid by them and which they had not paid. The aggregate deductions against each of them thus amounted to $18,971.25, which exceeded their proportion of the whole fund. He decreed the distribution of the above sum of $8,809.26, in the hands of the appellant, among the other beneficiaries under the will in a manner not drawn in question on this appeal, and directed the appellant to pay them accordingly..

Except that a clause was ordered to be inserted to the effect that the sum of the first degree ordered to be paid by S. F. and W. S. Richardson should be considered undistributed assets of the estate of the deceased, and that the par-

ties interested in that estate, or any of them, should be at liberty, at any time, to apply to the surrogate of Kings county for future directions in respect thereto.

The decree was affirmed at a General Term of the Supreme Court, and the appellant, the administrator with the will annexed, prosecutes the present appeal.

*J. C. Smith,* for the appellant.

*J. L. Campbell,* for the respondent.

DENIO, Ch. J.    It is not claimed that there was any error in the decree of the surrogate, so far as the settlement of the appellant's accounts as administrator are concerned.   He does not complain that he was charged with any greater sum than that which had come to his hands, or that any allowances to which he was entitled were rejected.   But, as the assignee of the testamentary gifts in favor of S. F. and S. W. Richardson, he was interested in the distribution of the balance in his hands as administrator, and the supposed error of which he complained affects only his interest as such assignee.   In that character he represents the Richardsons, and can claim no other rights than they would have been entitled to if they had not parted with their interests, but were now the claimants of a share of the assets distributed by the decree appealed from.   As legatees, they were chargeable, in the first instance, with $10,000 each for advancements made to them by the testator in his lifetime, and it is not contended by the appellant that they, or he, as their assignee and representative, would be entitled to anything until the legatees of the other four shares had each been paid an equal amount, that is, ten thousand dollars on each share.   But upon stating an account with each of the other shares, and charging the legatees with the advances made to two of them, and charging them respectively with all which had been paid them by the executors, it would require much more than the amount in the appellant's hands for distribution to make the payments to each of them equal to the $10,000 which each of the appellant's assignees had received, or, rather, were

chargeable with in the outset. The appellant's position, therefore, is, that the sums adjudged to be paid to these other legatees by the former decree should be considered as having been actually paid, and as extinguishing their legacies to that amount. By adopting that view, they would still each have received considerably less than the $10,000 which each of the Messrs. Richardson were chargeable with; but if enough of the balance in the appellant's hands were applied to make the five other legacies $10,000 each, there remains a surplus divisible among the legatees of the whole six shares, in which the appellant would be entitled to participate as the assignee of the two shares.

When it is considered that the legatees of the four shares given to persons other than the Messrs. Richardson have not been paid any part of the sums adjudged to them by the former decree, and that the failure to pay them arose from a breach of trust on the part of the Messrs. Richardson, and, moreover, that the appellant, as their assignee, stands precisely in their place, and has no other rights than such as they would have had if they had retained their interests and had been parties to the distribution of the sum now in controversy, his claim seems to be remarkably defective on grounds of natural equity. If it can be sustained at all, it must be on account of some positive rules of law which the court is not at liberty to disregard, and it is accordingly attempted to be supported on such grounds.

It is argued, in the first place, in substance, that the decree is in the nature of a judgment, which ordinarily merges and extinguishes the cause of action for which it was recovered. The right to the four legacies having thus been extinguished *pro tanto*, they cannot, it is said, be made use of, as to the portion so extinguished, to found a future claim upon other assets subsequently realized. There is, no doubt, a technical rule of the nature suggested, but I do not think it is applicable to this case. When the decree was made against the Messrs. Richardson, they had ceased to be executors, having been removed by an order of the surrogate. It was correct, I think, to continue the proceedings against them, notwith-

standing their removal. They were parties, who by means of their former position as executors, had got into their hands the assets of the deceased, and one of them had, before his removal, applied, on his own behalf, for an accounting respecting the trust. But if this were otherwise, and if the proceedings ought to have ceased when the executors were removed, it would not add to the effect of the decree. If it were void for that reason, it would not, of course, affect the rights of the legatees, in whose favor amounts were adjudged. But considering it, as I do, an effectual adjudication, and binding upon the parties charged, it was not a judgment against the estate, or against persons representing the estate. That was then represented by the appellant, and the Richardsons were third persons, who were accountable to the estate for moneys which they had received belonging to it, and which it was their duty to pay over to the parties to which it belonged. The remedy against them was, therefore, collateral to the claim of the legatees against the estate. The estate, or its then representative, was their principal debtor. Anything which they could obtain by means of this collateral remedy would be applicable to their demands upon the estate. But should they fail to obtain anything, their claim against the estate would not be impaired. The doctrine of extinguishment by judgment has no application where the judgment is not against the principal debtor, but against one collaterally liable. In such cases, both a judgment and satisfaction are required to affect the principal debt.

It is suggested that the first decree may possibly be enforced hereafter so as to produce satisfaction, and that in such an event the holders of the four shares will get a larger part of the estate than they are entitled to. The same feature would always be presented where a collateral security is carried to judgment.

Should the debt be afterward paid by the principal debtor it would not be right for the creditor to take the fruits of the judgment upon the collateral security, and the law would not permit him to do so. After payment by the party principally liable, he would be entitled to be subrogated to the

rights of the creditor upon the collateral judgment, and such creditor would be declared a trustee for his former debtor.

It is argued that the appellant, the present representative of the estate, is not entitled to enforce the former decree for want of privity with the subject, and authorities are cited in support of that position. We have lately had the question before us whether an administrator *de bonis non*, was entitled to maintain an action against the representative of an executor who had died without applying the assets which had come to his hands including moneys which he had collected, and we came to the conclusion that under the statutes the administrator could maintain such an action. (*Walker* v. *Walker*, decided at the June, Term 1864.) That decision answers the suggestion referred to.

It is further argued that the surrogate in making the decree appealed from, charged against the shares given to the Richardsons and were held by the appellant, the amount awarded against them by the former decree, as effects of the deceased wasted. The point of the objection is that they disposed of their property in their legacies to them anterior to the *devastavit* is a matter with which the appellant is concerned. It is a sufficient answer that these legatees after death of the testator became possessed as executors of all his personalty, and under the trusts of the will were entitled to receive the rents and profits and proceeds of the sales of the whole real estate. Being both executors and legatees, the realization of their legacies depended upon the faithful performance of the trust, and it was not possible for the legatees to separate the interest from the duty. He could not convey away the former and then waste the assets with which it should have been paid. The duty which attached to the legacy in the hands of the legatees, followed it into the hands of the appellant.

The same remarks are applicable to the sum charged against the legacy to the Richardsons, on account of their indebtedness to the estate for the deficiency arising upon the sale of the mortgaged premises under the foreclosure of a mortgage.

That was a part of the debt owing by them to the testator at the time of his death.. The proceeds of the sale on the foreclosure had not been realized at the time of the last accounting. After the change, by which the appellant was substituted for the executors as the representative of the estate, the appellant realized a certain amount, and the balance of the mortgage debt became absolutely chargeable against the Richardsons, the mortgagors. But the whole debt was coeval with the legacy, and the full payment of the debt was an equitable condition to the receipt by them of their legacies. This condition accompanied the legacies into the hands of the appellant.

In the view I have taken of the case I have impliedly conceded certain positions which may well be controverted. By laboring to show that the first decree was in its nature collateral to the demand of the legatees against the estate, because it was against parties who were not executors, I have assumed that if this were otherwise the appellant's point, that the legacies were extinguished *pro tanto*, would be well taken. If the accounting had taken place while the Richardsons had remained executors, and they had been unable to pay the amounts awarded against them because they had misappropriated the assets with which it ought to have been paid, and other assets had subsequently come into their hands, it is not possible that they could have treated the unsatisfied judgments against them in favor of the other legatees, as payments to those legatees, and on that basis have claimed a distributive share of subsequent assets, leaving the other legacies unpaid. The correct view, even in such a case, would be to regard the estate as the principal debtor, which could not be discharged except by actual payment, and to look upon the judgment against the executors as auxiliary only, not affecting the principal debt, that is, the legacies to the daughters and grandchildren, unless they became satisfied by producing payment, and in no sense an extinguishment; and if the executors could not set up such a position to increase their own dividend as legatees out of

37

the after acquired assets, no person claiming title under them could do it.

The saving which the Supreme Court added to the decree was a suitable provision, though not, I think, strictly necessary to preserve the rights of the legatees in any manner to be afterward realized as under the first decree. I am satisfied that the judgment of the Supreme Court ought to be affirmed.

Judgment affirmed.