(9 App. Div. 163.)

### OLMSTEAD v. LATIMER et al.

(Supreme Court, Appellate Division, Second Department. October 6, 1896.)

1. HEIRS—LIABILITY FOR MORTGAGE DEBT OF ANCESTOR.
    Under 1 Rev. St. p. 749, § 4, which makes mortgaged property primarily liable for the mortgage debt on the death of the mortgagor, the holder of a mortgage cannot sue the heirs of the deceased mortgagor until he has first exhausted his remedy against the mortgaged premises.

2. SAME—SHORT STATUTE OF LIMITATIONS.
    Code Civ. Proc. § 1822, which provides that an action on a claim against a decedent which has been presented to and rejected by the executor or administrator must be brought within six months after the rejection, does not apply to an action to enforce the liability of heirs for a debt of their ancestor, where the claim was not presented to the administrator.

3. SAME—CONVEYANCE BY HEIRS.
    Heirs of a decedent mortgagor who convey their interest in the mortgaged premises to their co-heir do not thereby become personally liable for the mortgage debt, though the deed is not made subject to the mortgage.

4. CONTRACTS—CONSIDERATION—EXTENDING TIME OF PAYMENT.
    An agreement between a debtor and creditor that the time of payment of the debt should be extended is supported by a sufficient consideration, as it may be advantageous to the creditor to continue the investment.

Appeal from special term, Kings county.

Action by Dwight H. Olmstead, as trustee, against Frederick B. Latimer, Brainard G. Latimer, and Henry A. Latimer, to foreclose a mortgage on property in the city of Brooklyn, executed by John G. Latimer, deceased, and to charge defendants, as heirs at law of the mortgagor, for any deficiency which might arise on the sale to the extent of the value of the real estate of the mortgagor which descended to them. The trial judge gave judgment of foreclosure and sale, holding defendant Frederick B. Latimer to be liable for $16/75$ of any deficiency that might arise on the sale, and relieving the other two defendants of any liability whatever for such deficiency. Judgment was entered accordingly, and plaintiff and defendant Frederick B. Latimer appeal. Modified.

Argued before BROWN, P. J., and CULLEN, BARTLETT, and HATCH, JJ.

Charles D. Ridgway, for plaintiff.
Joseph A. Burr, for defendants.

CULLEN, J. In August, 1878, one John G. Latimer executed his bond, with a mortgage on a lot and building on Atlantic street, Brooklyn, to secure the sum of $18,000, borrowed by him. The plaintiff subsequently acquired that bond and mortgage. In 1884, Latimer died, intestate, seised of the mortgaged premises, leaving a widow and four brothers (the three defendants and one James D. Latimer) his only heirs at law. Letters of administration were issued on the estate of John G. Latimer, and upon the settlement of the estate it appeared that the personal estate was exhausted by the payment of the debts and expenses of administration, leaving a deficiency in the amount due for administrator's fees. The deceased left real estate of considerable value. During 1888 and 1889 three of the brothers conveyed to the fourth, the defendant Frederick B. Latimer, all their interest in the mortgaged premises. On October 15, 1891, the plaintiff and the defendant Frederick B. Latimer executed the following agreement:

"We agree that the time for the payment of the bond and mortgage for $18,000, on 201 and 203 Atlantic avenue, Brooklyn, made by John G. Latimer to the executors of Noah T. Pike, and recorded in the register's office of Kings county in Liber 1,425 of Mortgages, page 17, August 24, 1878, being the date thereof, shall be, and hereby is, extended to May 1, 1895, subject to the same terms and conditions, including tax, insurance, and interest clauses, as at present.

"Dated New York, October 15, 1891.

"Dwight H. Olmstead,
"Executor and Trustee under Will of Noah T. Pike.
"F. B. Latimer."

In April, 1892, a fire occurred in the buildings on the mortgaged premises, by which they were partially injured. In an attempt to restore the buildings, they collapsed, and became a total loss. By this accident, the value of the mortgaged premises fell below the amount of the mortgage. Thereafter the plaintiff instituted this action to foreclose the mortgage, and hold the defendants, as heirs

at law of the original bondsman and mortgagor, liable for any deficiency. The trial court held the defendant Frederick liable for $^{16}/_{76}$ of any deficiency, and the other defendants not liable. From this decree, the plaintiff and the defendant Frederick appeal; the former seeking to hold all the defendants, the latter to be relieved from liability.

It is not disputed that the defendants are liable on the obligation of their ancestor, unless either the conduct or dealing of the plaintiff with the bond and mortgage in suit has discharged them; nor is any point raised against the right to enforce such liability in this action. The claim of the defendants, that they have been discharged from liability, is based on the fact that the plaintiff failed to present any claim to the administrator before the settlement of the estate. Under our statute (1 Rev. St. p. 749, § 4), upon the decease of the mortgagor, the mortgaged property became primarily liable for the debt. After that, and for any deficiency, the personal estate was next liable. Then, and only in case the personal estate was insufficient, the heirs at law were liable to the extent of their inheritance. Before the creditor can resort to the personal estate of the testator, he must first exhaust his remedy against the land, and look to the general estate of the bondsman only for the deficiency. Johnson v. Corbett, 11 Paige, 265; Hauselt v. Patterson, 124 N. Y. 349, 26 N. E. 937. This, we think, is also true of an attempt to proceed against the next of kin or heirs at law, although there is authority to the contrary. Roosevelt v. Carpenter, 28 Barb. 426. On these premises, the defendants contend that, as plaintiff could have no claim against the administrator until he foreclosed the mortgage, it was his duty to have foreclosed it during the period prescribed by law for the presentation of claims against the estate; that, had the mortgage been then foreclosed, there would have been no deficiency, as during that time the property was ample to satisfy the mortgage; and that, by his failure so to act, the plaintiff discharged the estate of the bondsman from any claim. The fault of this argument lies in the assumption that a claim against a deceased person must be presented to the administrator during the advertised period, or otherwise is barred. Such is not the statute. If the creditor fails to present his claim in time, the administrator is not chargeable with assets he may have paid in satisfaction of debts or have distributed. Code Civ. Proc. § 2718. This is the only effect of such a failure. Id. § 1837. The creditor may wait as long as he pleases, provided he keeps within the statute of limitation, and then proceed against the next of kin or heirs at law, if there be a deficiency in person. The case of Selover v. Coe, 63 N. Y. 438, is not in point. There the creditor did present his claim to the administrators. It was rejected by them, and the claimant failed to bring his action within six months, as prescribed by the statute. This short statute of limitations was held to bar all actions to collect the claim, and such rule is now expressly enacted by the Code (section 1822). But to a claim not presented to the administrator this rule has no application. We think it clear, therefore, that, before the defendants transferred the title to the

mortgaged premises, they all remained liable proportionately for any deficiency that might arise on the mortgage debt.

Before we discuss the effect of the agreement between the plaintiff and the defendant Frederick, there must be first determined the effect of the conveyances to Frederick from his co-defendants. These conveyances are not recited in full in the record. It is there stated: "These deeds were for the consideration of $1 each, and there is no reference in any way therein to the mortgage." From this we assume that the deeds were grants without covenants. The plaintiff contends that by such conveyances, they being not subject to the mortgage, the grantors became or remained primarily liable for the mortgage debt, and that the land stood only as a surety. In support of this claim, the plaintiff relies on Wadsworth v. Lyon, 93 N. Y. 201. In that case Louisa Lyon executed her bond and mortgage on certain lands for the sum of $4,000. She afterwards conveyed the land, by quitclaim deed, for $10,000, its full value, to Mrs. O'Day. The deed in no way referred to the mortgage. It was held that Mrs. Lyon remained primarily liable on her bond, and the land was only security for the debt. It will be seen that in this case, before the conveyance, and while the lands were held by Mrs. Lyon, her bond was the primary liability, and the mortgage was only a collateral security. As the grantee neither took subject to the mortgage, nor agreed to pay it, it was held that the conveyance worked no alteration in the original relation in which the bond and the mortgage stood towards each other. This is the ground on which the decision proceeded. But that rule does not apply where the grantor is not primarily liable personally. In Wilbur v. Warren, 104 N. Y. 192, 10 N. E. 263, Warren acquired directly from a mortgagor 90 acres of land, subject to a mortgage of $2,400, which Warren covenanted to pay as a part of the consideration. Warren, after having paid $1,400 on the mortgage, conveyed the premises to his daughter Wilbur for $1, by deed with full covenants, but which in no way referred to the mortgage. It was held that the covenant by Warren to pay the mortgage did not make that debt his own; that his liability was auxiliary, not primary; and that hence, despite the fact that the conveyance was not subject to the mortgage, nevertheless, as between the grantor and grantee, the land conveyed was the primary fund out of which to discharge the debt. In the case before us the heirs at law occupied a double relation to the mortgaged property: First, as inheriting the mortgaged property; secondly, as inheriting other real estate from the deceased mortgagor, and liable in contingencies for the latter's debts. In the first relation the provision of the statute (1 Rev. St. p. 749, § 4) did not create a personal liability for the mortgage debt, but was designed to make the land primarily liable. Hauselt v. Patterson, 124 N. Y., at page 357, 26 N. E. 939. In the second relation, that of heirs at law to the general creditors of their ancestor, the liability to pay was both dependent on contingency and limited in amount. In neither relation did the personal obligation of the heirs become the primary obligation of the creditor, but the land, even while the title stood in all the heirs, was pri-

marily liable for the debt. Hence, when it was conveyed by three of the heirs to the fourth, the land still remained the primary fund, though the conveyances did not refer to the mortgage, and from the time of the conveyances the grantors stood as sureties only.

We now reach the question whether the dealings between the plaintiff and the defendant Frederick have discharged the other defendants. It is settled by authority that mere indulgence or delay granted the principal debtor does not discharge the surety. To discharge a surety, there must be an agreement for extension valid as resting upon a sufficient consideration. The only consideration for the extension in the present case is that expressed in the instrument,—the promise of the debtor that the mortgage should not become due until May 1, 1895; in other words, the mutual promises that the mortgage should be extended until that time. It has been decided in some cases that this consideration is insufficient, and that the agreement is therefore invalid. The learned trial judge, while accepting the authority of these cases, held that the present case was taken out of the rule by the fact that the defendant Frederick paid interest on the mortgage after the execution of the agreement for extension, and that the plaintiff was estopped, by accepting the interest, from denying the validity of the agreement.

Kellogg v. Olmsted, 25 N. Y. 189, the last of these authorities, was decided by a divided court on what was regarded as authority, and not on the reason of the thing. Judge Sutherland said:

"These cases, then, in effect, decide, if a creditor whose debt is due, in consideration of the payment of a part of it, and of a promise on the part of his debtor to pay the balance on a certain future day, and not before, promises to extend the time of payment of such balance until that day, that such promise is without consideration, and void."

Judges Davies and Denio dissented, the former saying:

"The question presented for decision is whether the agreement offered in evidence was founded on a sufficient consideration. I am unable to see why not. It was undeniably a benefit to the holder of the note to invest his money for a further term of six months at lawful interest, and it is not clear that it was a disadvantage to the defendants to pay that rate of interest for that term. Money lenders regard it as advantageous to themselves to loan their money securely, and the benefit to them seems to me to be a sufficient consideration for a promise to permit the lender to have it a given length of time, he paying the lawful interest thereon. Such contracts and agreements the frequently made, and the benefit or injury to the lender or borrower depends mainly upon the state of the money market."

The learned judge cited two authorities in New Hampshire sustaining the proposition contended for by him. If the rule enunciated in this case is not to be gainsaid, the reasoning adopted by the trial court to avoid its effect is probably as effective for the purpose as any that can be formulated. But why should the rule longer obtain? It is not a rule of property on the faith of which the community has acted. It is clearly in conflict with the interests and conduct of business. Corporation bonds amounting to millions of dollars fall due annually, and are extended by agreement stamped on their face, with no other consideration than that that exists in this case,—the promise of the creditor to extend payment to the day specified, the promise of the debtor not to pay be-

fore the time specified, and to pay interest meanwhile. It is often the desire and the interest of both creditor and debtor in mortgage investments to extend the period of investment. The borrower has nothing more to give, and the lender desires nothing more to exact, than the extension, which is of mutual advantage to both parties. There is certainly nothing immoral in such contract. On the contrary, it is entirely proper, as well as most common. Interference by the state with liberty of contract is only justified where the contract affects public interests or morals. But here a class of most useful and proper contracts is condemned simply because the court saw fit, many years ago, to announce, not as a matter of law, but as a fact, that which, if true when uttered, every intelligent person knows now to be false, to wit, that a promise made by a borrower to pay at a certain time, with interest, and not before, is not a valuable consideration. The 5 per cent. mortgage bonds of the Third Avenue Railroad Company, having a long term of years to run, sell to-day for over 120 per cent. If the bonds were payable now, they would be worth but par and accrued interest. So, the fact that the debtor has agreed not to pay now, but at a subsequent period, is not only sufficient consideration for the forbearance of the money, but for 20 cents on the dollar of principal in addition thereto. The same thing is true in a greater extent of the obligations of the government, of the state, or responsible municipalities. It is true, there are ways in which this technical rule can be avoided, though it is difficult to do so where there are subsequent liens on the mortgaged property. But why should the community be put to trouble and expense to avoid a technical rule involving neither property rights nor morals, in defense of which nothing logical can be said? Why is it not wiser to no longer recognize the rule?

It seems to us the case of Bank v. Faurot, 149 N. Y. 532, 44 N. E. 166, is entirely applicable to the rule under discussion. It was there held that notes of corporations, though under seal, are not negotiable instruments. Unquestionably, at common law the seal would have taken such instruments out of that class; but it was held that the rule was no longer consistent with the course of business in the community, and therefore should no longer prevail. Judge Bartlett there quotes, with approval, the saying of Judge Grier, in Mercer Co. v. Hacket, 1 Wall. 83:

"But there is nothing immoral or contrary to good policy in making them negotiable if the necessities of commerce require that they should be so. A mere technical dogma of the courts or the common law cannot prohibit the commercial world from inventing or using any species of security not known in the last century."

We think, therefore, the agreement of extension was valid, and discharged the defendants other than Frederick from any liability on the bond.

We think the trial court erred in the proportion of deficiency it imposed on the defendant Frederick. There were four heirs at law, but, instead of charging that defendant with one-quarter of the debt, he was charged with $16/75$. The ground of the decision in this

respect is that the widow's dower was ascertained as being worth $^{11}/_{75}$ of the testator's realty, and that each defendant only received one-quarter of the remainder, equal to $^{16}/_{75}$.    The mistake in this computation arises from the failure to observe that a widow's dower is no part of the estate of a deceased husband.    Chamberlain v. Chamberlain, 43 N. Y. 424–440.    The estate of the husband was but $^{64}/_{75}$ of the whole value of the realty, and of this the defendant Frederick inherited a fourth.    He is therefore liable for a quarter of the debt of his ancestor.

The judgment should be modified by increasing the liability of the defendant Frederick to one-quarter of any deficiency that may arise on the foreclosure sale, and in all other respects affirmed, with costs of appeal to the plaintiff as against the defendant Frederick B. Latimer, and with costs of appeal to the other defendants as against the plaintiff.    All concur.

(9 App. Div. 66.)

### NEUDOERFFER v. BROOKLYN HEIGHTS R. CO.

(Supreme Court, Appellate Division, Second Department.  October 6, 1896.)

ACCIDENTS AT RAILROAD CROSSINGS—RULE OF "STOP, LOOK, AND LISTEN."
   In New York it is not negligence per se for a person to attempt to cross a railroad without first stopping, looking, and listening.  McQuade v. Railway Co. (Sup.) 39 N. Y. Supp. 335, criticised.

Appeal from trial term, Kings county.