(24 App. Div. 190.)

## In re OLMSTEAD.

(Supreme Court, Appellate Division, First Department.   December 31, 1897.)

1. TESTAMENTARY TRUSTEE—RESIGNATION.
    Under Code Civ. Proc. § 2814, the surrogate is not authorized to permit a testamentary trustee to resign his trust, and be discharged as trustee, and at the same time permit him to retain·in his possession a portion of the trust property for any purpose.

2. SAME—SETTLEMENT OF ACCOUNTS.
    Where it is clear that until the termination of a pending action the accounts of a trustee cannot be settled, his application for leave to resign should be denied until the action is terminated.
    Williams and O'Brien, JJ., dissenting.

Appeal from surrogate's court.

In the matter of the judicial settlement of the accounts of Dwight H. Olmstead, trustee under the will of Noah T. Pike. From a decree accepting the resignation of the trustee, and settling his accounts, certain beneficiaries appeal.   Modified.

Argued before VAN BRUNT, P. J., and WILLIAMS, PATTERSON, O'BRIEN, and INGRAHAM, JJ.

Henry H. Man, for appellants.
Charles D. Ridgway, for respondent.·

INGRAHAM, J.   The respondent presented to the surrogate's court a petition praying that his accounts as trustee under paragraph 7 of the last will and testament of Noah T. Pike, deceased, might be judicially settled, and that a decree thereupon be made, allowing him to resign his trust, and discharging him accordingly. Certain of the beneficiaries under that trust appeared, and filed objections to the accounts of the trustee, which were overruled, the accounts approved and confirmed, and the petition granted, permitting the trustee to resign the trust held by him under paragraph 7 of .the last will and testament of the said Pike, deceased, .and appointing the United States Mortgage & Trust Company of . the City of New York as substituted trustee, and directing the said trustee to assign and transfer to the said trust company all of the trust property (excepting, however, from such transfer, the bond and mortgage of one John G. Latimer, to secure the payment of $18,000, which said bond and mortgage the said trustee was ordered and directed to retain in his possession until the determination of the appeal now before the court in the suit brought by the said trustee to foreclose said mortgage), and providing that, upon his making such payments and transfer, he shall be forever relieved, exonerated, and discharged as trustee under the said will.   The appellants insisted before the surrogate that the said trustee should be charged with the full amount due upon this bond and mortgage, as by the act of the trustee the responsibility of the heirs at law of the mortgagor had been released from liability, and that the trustee, by his negligence, had failed to enforce the bond and mortgage, whereby a large portion of the amount due thereon had been lost to the estate.   The surrogate

decided, as a fact, that the trustee had not been negligent, and
that he was not chargeable with the loss upon this bond and mort-
gage. It is not necessary, at this stage of the proceeding, to pass
upon that question. It is sufficient for us to say that we are not
satisfied with the decision of the surrogate upon the facts before
him. We do not think, however, that the surrogate should have
permitted the trustee to resign his trust, and be discharged as trus-
tee, and at the same time permit him to retain in his possession a
portion of the trust property for any purpose. The proceeding was
instituted under section 2814 of the Code of Civil Procedure. It
is there provided that a testamentary trustee may present to the
surrogate a written petition, praying that his accounts may be
judicially settled; that a decree may thereupon be made, allow-
ing him to resign his trust, and discharging him accordingly; that
the surrogate may, in his discretion, entertain or decline to enter-
tain the petition.

"If he entertains it, the proceedings must be, in all respects, the same as
upon a petition for a judicial settlement of the petitioner's account, except
that, upon the hearing, the surrogate must first determine, whether such
sufficient reasons exist for granting the prayer of the petition; if he deter-
mines that they exist, he must make an order accordingly, and allowing the
petitioner to account for the purpose of being discharged. Upon the peti-
tioner's fully accounting, and paying all money belonging to the trust, and
delivering all books, papers and other property of the trust, in his hands,
either into the surrogate's court, or as the surrogate directs, a decree may
be made accepting his resignation and discharging him accordingly."

The surrogate entertained the petition, and he determined that
sufficient reasons existed for granting the prayer of the petitioner.
He had no authority, however, to make a decree accepting his res-
ignation, and discharging him from all liability, until he had fully
accounted, and paid all money belonging to the trust, and deliv-
ered all the books, papers, and other property of the trust in his
hands, either into the surrogate's court, or as the surrogate direct-
ed. This decree assumes to accept the resignation, and discharges
the trustee, upon his paying the money and transferring to the
new trustee the securities in his hands; excepting, however, from
such transfer and assignment, the bond and mortgage of John G.
Latimer to secure the payment of $18,000 and interest, which said
bond and mortgage the said trustee was ordered and directed to
retain in his possession. He was not discharged upon his final
accounting for such bond and mortgage, but was discharged upon
making such payment and transfer provided for in the decree,
from which there was expressly excepted the transfer and assign-
ment of this bond and mortgage. The Code evidently contem-
plates an accounting for all the property in the hands of the trus-
tee, and its delivery over before the making of the decree accept-
ing the resignation of the trustee; and no authority existed for
releasing the trustee until he had actually accounted for all the
trust estate, and paid over all money, and delivered all property of
the trust, as the surrogate directed. Upon the acceptance of the
resignation of the trustee by the surrogate, his title to the trust
estate ceased, and the trust estae vested in the new trustee ap-

pointed to execute the trust. The trustee that had resigned would have no title to any part of the trust estate, and would not be authorized to maintain or continue any suit in relation to it. If it were proper, under the circumstances, to continue the trustee, as to his control of this mortgage and the existing litigation to enforce it, his application for leave to resign the trust should have been denied until the determination of this litigation; and it is clear that, until the action to enforce the mortgage is terminated, the accounts of the trustee cannot be settled. The provision of the Code above cited allowed the decree only upon the trustee's fully accounting, and paying all money and delivering all property as the surrogate should direct. We think, therefore, that the portion of the decree of the surrogate permitting the trustee to resign should be reversed, and his application for leave to resign denied.

Upon the question of the settlement of the trustee's accounts, the decree can stand, except so far as it relates to this mortgage in question. The beneficiaries under the trust sought to charge the trustee with the full amount of this bond and mortgage. Such a charge would have been improper, because it does not appear that there will be any loss at all in consequence of the acts of the trustee. It may be that upon the sale of the mortgaged premises the property will bring a sum sufficient to pay the amount of the mortgage, interest, and costs, or that by a reversal of the judgment as to the liability of the heirs at law of the mortgagor a sufficient sum would be recovered from them to pay any deficiency which may arise upon the sale of the property. It is only the amount of any deficiency over and above that which would have been recovered, but for the acts of the trustee, for which he is liable, if liable at all; and it is quite clear that that amount cannot be ascertained until the end of the litigation, and the sale of the property under judgment of foreclosure. The question as to the responsibility of the trustee for any deficiency should await the result of these proceedings. It is quite possible that no such deficiency will exist upon the final determination of the proceedings to enforce the mortgage, and that amount should be left open, to be determined in case any necessity is presented; and the trustee has voluntarily refrained from selling the mortgaged property under the judgment of foreclosure and sale, and until such sale, and the amount of every deficiency is ascertained, it is impossible to settle his accounts, and he should not be allowed to resign as trustee, and thus be relieved from all liability. Nor do we think that the payment by the trustee of a counsel fee to the trustee's attorney for the proceedings brought by the trustee for leave to resign should be allowed. Whatever amount should be allowed to the attorney for the trustee in this proceeding should be fixed in the final decree as costs in that proceeding (Code, §§ 2561, 2562), and not as a payment to counsel as a proper sum chargeable to the principal of the estate.

The decree should therefore be reversed, so far as it allows the trustee to resign, and discharges him from liability to the estate;

sustaining the exceptions of the beneficiaries to the allowance to the trustee of the costs and expenses of the proceedings to foreclose the mortgage, and the sum of $350 to the trustee's counsel as retaining fee upon this proceeding, and confirming the decree in other respects, with costs of this appeal to the appellants, to be paid out of the estate in the hands of the trustee.

VAN BRUNT, P. J., and PATTERSON, J., concur.

WILLIAMS, J. (dissenting). The trustee petitioned for a settlement of his accounts, and for leave to resign his trust and be discharged. The proceeding thus begun resulted in the decree appealed from. The cestuis que trustent objected to certain portions of this decree, and the exceptions with reference thereto raise the questions presented upon this appeal. Among the securities that came into the hands of the trustee were a bond and mortgage for $18,000 given by one John G. Latimer; the mortgage covering real property in the city of Brooklyn, N. Y. The bond and mortgage were given in 1878, payable five years from date. The mortgagor died in 1884, after the mortgage became due; leaving a widow and four brothers, his heirs at law, and leaving an estate (which was inherited by the four brothers) of $50,000, aside from the property mortgaged. After the mortgagor's death, one of the brothers acquired the interest of the widow and the remaining three brothers in the mortgaged property; and in 1891 the trustee, at the request of the brother owning the equity of redemption in the mortgaged property, extended the time for payment of the bond and mortgage until May 1, 1895, without the consent of the remaining three brothers of the deceased mortgagor, and without requiring from the brother who owned the equity of redemption an agreement to pay the whole amount of the bond and mortgage. In April, 1894, the buildings upon the mortgaged property were damaged by fire. The trustee held policies of insurance upon the buildings aggregating $10,000, and the owner of the equity of redemption held policies thereon aggregating $11,000. The loss was adjusted at $3,400, of which $1,619.04 was payable to the trustee, and the remainder to the owner of the equity of redemption. The trustee permitted the owner of the equity of redemption to receive the $1,619.04 from the insurance companies to be used in repairing the buildings upon the mortgaged property. The insurance moneys were paid by the companies May 19, 1894, and on May 27, 1894, the buildings collapsed, and became a total loss. The interest upon the bond and mortgage had theretofore been paid as it became due, but on November 1, 1894, there was default in the payment of the interest then becoming due; and in April, 1895, the trustee commenced an action of foreclosure in Kings county. The heirs of John G. Latimer, deceased, were made parties to the action, and a judgment was demanded against them for deficiency. The three brothers who had parted with their interest in the mortgaged property interposed the defense that the extension of the time for payment of the bond and mortgage had

discharged them from liability. The trial court held this defense good, and the appellate division, in the Second department, affirmed the decision. The latter court also held that the brother who was the owner of the equity of redemption was liable for one-fourth of the deficiency (9 App. Div. 163, 41 N. Y. Supp. 44). An appeal has been taken by the trustee from the decision by the appellate division to the court of appeals, and the appeal is still pending and undetermined. A sale of the mortgaged premises has not been had, but is held to await the decision of the appeal. The cestuis que trustent, the appellants from the surrogate's decree, requested the surrogate to find, among other things, that the trustee was guilty of gross negligence and willful misfeasance in extending the time for the payment of the bond and mortgage, and thus releasing the three brothers of the deceased mortgagor from liability upon the bond for deficiency, and in not securing a larger amount from the insurance companies in settlement of the loss by fire in the buildings upon the mortgaged property, and in allowing the owner of the equity of redemption to take the share of the insurance moneys payable to the trustee, and that a substantial loss to the trust estate had resulted from such negligence and misfeasance, and that it was incumbent upon the trustee to make the trust estate good, to the full extent of the bond and mortgage, with interest, and to reimburse the estate for the expenses of the foreclosure action, and of his efforts to enforce the bond paid by him from the trust funds. The surrogate refused to make these findings, and held and decided that the trustee was not guilty of any negligence or misfeasance, nor chargeable with any loss resulting from negligence or misfeasance with reference to the bond and mortgage, in view of the clause in the will under which he acted as trustee. By the decree the account of the trustee was settled, and the trustee was permitted to resign his trust, a new trustee was appointed, and the old trustee was directed to transfer to the new trustee the trust estate, except that he was allowed to retain the bond and mortgage pending the appeal to the court of appeals and a sale of the mortgaged property, and was directed, after such sale, to pay over to the new trustee the proceeds of the sale, and any deficiency collected upon the bond, less the costs and disbursements ordered to be paid therefrom by the court, and such other expenses as might be allowed by the surrogate's court upon the foot of the decree; and upon making such payment, and filing receipt therefor, he should be discharged from the trust. The trustee was allowed, in settling his account, credit for costs paid to his attorney in the action for foreclosure, and he was also allowed a credit for $350 for services in this accounting, and another proceeding against him for an accounting.

We do not see how it could be determined by the surrogate at the time of the making of the decree, or how it can now be determined, whether the trust estate has suffered any loss upon the bond and mortgage in question. It cannot be known until the sale of the mortgaged premises takes place how much will be realized from such sale, or whether there will be any deficiency to be paid

by any of the parties liable upon the bond; nor can it be determined, until the decision of the court of appeals, whether all the heirs of the mortgagor will be liable upon the bond for such deficiency. It is possible, therefore, that the whole amount due upon the bond and mortgage, and costs and expenses of the action, will be recovered, and that there will be no loss whatever to the trust estate. We are not prepared to assent to the correctness of the decision of the surrogate that the trustee is not liable for the loss to the trust estate if any shall finally be found to have been suffered. It will be time to settle that question, however, when it shall appear that loss has been sustained. We think that the surrogate should have reserved decision as to this question until the termination of the foreclosure suit, and the sale of the mortgaged property, and the collection of such part of the deficiency, if any, as could be collected, and have provided by the decree for a supplemental accounting with reference to this bond and mortgage, and the costs and expenses of the suit to foreclose the same and enforce the liability upon the bond. Nor do we see why the old trustee should have been permitted to retain the bond and mortgage, and to conduct the proceedings to enforce collection of the same. The decree should have provided for the transfer of these to the new trustee, with the other assets of the trust estate; and the new trustee should have been directed to prosecute the action and appeal to a termination, and collect and receive such moneys as he could upon the bond and mortgage. There is no reason apparent to us why the trustee, after his resignation, and after the appointment of a new trustee, should be allowed to retain any portion of the assets of the trust estate. We are not inclined to disturb the allowance by the surrogate of the $350 to the trustee for services of his attorney in this and other proceedings for an accounting. The decree made by the surrogate should be modified in the respects referred to, and, as modified, should be affirmed, without costs of this appeal.

O'BRIEN, J., concurs.