(30 Misc. Rep. 350.)

In re OLMSTEAD.

(Surrogate's Court, New York County. January, 1900.)

1. TRUSTS—MANAGEMENT OF TRUST PROPERTY BY TRUSTEE.

Where mortgaged property was worth nearly twice the amount loaned, a trustee was not wanting in prudence in extending the mortgage for five years, at a rate of interest as good as could be obtained.

2. SAME.

A trustee was not wanting in prudence, in extending a mortgage, in not requiring a bond from the then owner of equity of redemption, who was the son and heir of the original obligor, where the property was worth twice the amount loaned, and the effect of taking such bond would have been to release the other heirs of obligor from liability.

3. SAME.

Where mortgaged property was injured by fire, a trustee holding such mortgage for an estate is not chargeable for the amount of insurance paid, where he permitted owner of equity of redemption to retain the amount, on consideration that he make repairs made necessary by the fire; and this, though the building collapsed while repairs were being made.

4. SAME.

Delay of a year by a trustee to foreclose a mortgage belonging to the trust estate, and which had been extended, is not negligence, where he was advised that the extension might operate to release heirs of the original obligor, and the delay resulted in the collection of an installment of interest; the property being vacant, and producing no income.

In the matter of the application of Dwight R. Olmstead, as trustee, etc., of Noah T. Pike, deceased. On exceptions to referee's report. Exceptions overruled. See 49 N. Y. Supp. 104.

Charles D. Ridgway, for petitioner.

Man & Man, for contestant.

THOMAS, S. The unhappy loss to the trust fund was occasioned by the collapse, in 1894, of the building on the premises covered by the $18,000 mortgage. This disaster was not caused, either directly or indirectly, by any act or omission of the trustee, and no amount of care and prudence on his part could have prevented it; but these facts do not exonerate him from liability if, in his dealings with the security, he omitted ordinary and reasonable precautions against depreciation in the value of the property. We must, however, judge of each act or omission on his part as of its date, and keep in view the information which he then had. Purdy v. Lynch, 145 N. Y. 475, 40 N. E. 232; Crabb v. Young, 92 N. Y. 56. The stipulation executed by him in 1891, extending the time for the payment of the mortgage for five years, was entirely proper. The mortgaged property is conceded then to have been fairly worth $35,000, which was nearly twice the amount of the mortgage, and the interest received was 5 per cent., which was as much as could then be obtained on good real-estate collateral. The bond secured was that of John G. Latimer, while the title to the equity of redemption was, at the time of the extension, in Frederick B. Latimer, a son and one of the heirs of the obligor, and it is suggested that a new bond of Frederick B. Latimer should then have been required. If this had been done, a consideration for the extension would have been furnished which would have operated to release the other heirs of the obligor, and the judgments which now exist against the other heirs of the original obligor could not have been obtained. In the absence of such new bond, the obligation of the old security remained intact (Olmstead v. Latimer, 158 N. Y. 313, 53 N. E. 5), and the trustee cannot be condemned for electing to retain the original bond rather than to demand a new one. And, even if the mortgage had stood practically without any personal obligation, the security was so full and ample that it can hardly be said that the trustee acted indiscreetly in refraining from demanding its immediate payment, unless a new bond of the then owner of the equity of redemption should be furnished. When the fire occurred, on April 25, 1894, the trustee made a personal inspection of the property. It is true that this inspection was not of a very thorough kind; but a more careful examination was made by a person believed to be a competent expert, and the entire damage to the property was appraised, for the purposes of the insurance, at $3,400, while the building is stated to have then been worth $20,000. It was then believed that the building could be completely restored and repaired for $3,400, and I find no evidence to charge the trustee with notice that this was not the fact, or to establish that he could, by any degree of diligence, have discovered that no repairs would have sufficed to make the property as valuable as it was before the fire. On the facts as then known the entire depreciation of the property was $3,400,

which still left a handsome margin above the mortgage. Of the $3,-400 damage payable by the insurers, $1,600 was awarded to the trustee and $1,800 to the owner of the equity, and the trustee waived his right to payment, allowing the owner of the equity to take the whole sum, on his promise to proceed forthwith in making repairs. Under the facts as then known this was not an unreasonable arrangement, since the security appeared to be ample, and the immediate repairing of the property was most desirable. The owner of the equity proceeded with the repairs, and had been in the building cleaning out the débris, when, about a month after the fire, and about eight days after the payment of the insurance money, the entire building collapsed and became a heap of ruins. The precise cause of the final catastrophe is not disclosed, and is said not to be known; but it seems probable that the injury done by the fire was, in some respect not discovered, much more serious than had been supposed. In all of this I find no cause for casting the loss, or any of it, on the trustee. It is said that one reason why the trustee did not demand payment to himself of the insurance money was that he had promised the beneficiary of the trust, Mr. Pike, to pay him interest at 5 per cent. on all uninvested trust funds, and therefore preferred to have the money invested upon poor security rather than to accept a burdensome obligation. I cannot adopt any such inference. The promise to pay interest was clearly void, since it was without consideration or mutuality. It is not pretended that the beneficiary assented to the personal use by the trustee of uninvested trust assets, and if the trustee preferred to keep the property invested in a way which then appeared prudent and safe, rather than to commit a palpable breach of trust, this can afford no ground for inflicting a penalty upon him. In the subsequent proceedings of the trustee no lack of diligence is to be found. He delayed foreclosing the mortgage for a year, because he was advised that the courts might hold the agreement of extension binding, and this advice was most excellent, for such a decision was rendered at special term, and affirmed at the appellate division (Olmstead v. Latimer, 9 App. Div. 163, 41 N. Y. Supp. 44), and it was only by a further appeal to the court of appeals that a contrary rule was established (158 N. Y. 313, 53 N. E. 5). The delay in bringing the foreclosure proceeding resulted in the collection of one installment of interest, and the mortgaged property, which is now one of the trust assets, is still vacant, and has never been a source of income, and I find no evidence that a more prompt commencement of the action would have resulted in any pecuniary benefit. As a result of the litigation, every claim made by the trustee against the heirs of the obligor on the bond has been sustained, and he is not to be blamed because some of the judgments which he has obtained are not collectible. It may be noticed that the judgment against Frederick B. Latimer, who was the owner of the equity of redemption at the time of the extension of the mortgage, and the person whose bond it is claimed should have been required as a condition for such extension, is still unpaid. In the will of the testator it is expressly provided that the trustee is not to be held liable for any loss to the estate, except the same was caused by his

"gross negligence or willful misfeasance." The testator had a right to proffer to his trustee an assurance that the courts would judge all of his acts with special and unusual leniency (Crabb v. Young, 92 N. Y. 56), and the trust was accepted on those terms. I find no evidence of any willful default, nor, indeed, is any claimed. Neither do I find any negligence of a degree which can fairly be charged to be excessive or gross. The exceptions to the referee's report are overruled, the report is confirmed, and the relief therein awarded is granted.

Exceptions overruled, and report confirmed.