(96 App. Div. 262.)

ROSEN v. WARD et al.

(Supreme Court, Appellate Division, First Department. · July 13, 1904.)

1. EXECUTORS—DISCHARGE—ACCOUNTING—TRUST FUND.
Where executors of a deceased trustee have had their discharge under the surrogate's decree, and accounted for and distributed all of the assets of the estate which came into their hands, they cannot be required to account further in an executorial capacity as to a trust declared by testator, in the absence of any claim which would show either knowledge on their part of the existence of a trust fund, or that any such fund ever came into their hands, or that they had any assets out of which unliquidated claims against the fund could be paid.

Appeal from Special Term, New York County.

Action by Jacob Rosen, as trustee in the place and stead of George Bliss, deceased, against J. Langdon Ward and another, executors of the estate of George Bliss, deceased. From an interlocutory judgment for plaintiff, defendants appeal. Reversed.

Argued before VAN BRUNT, P. J., and HATCH, McLAUGHLIN, O'BRIEN, and LAUGHLIN, JJ.

J. Langdon Ward, for appellants.
Michael Schaap, for respondent.

O'BRIEN, J. There is no serious dispute between the parties as to the facts, and they may be therefore briefly summarized so as to present, among others, the precise questions upon which we think this appeal should turn:

Ernest G. Stedman and his wife conveyed to George Bliss during his lifetime, by deed, dated April 30, 1891, certain lots of land in Jamaica, Queens county, subject to two mortgages—one for $11,000, and the other for $8,000. On May 7, 1891, Bliss declared in writing that he held the property—

"Upon the uses and trusts following, that is to say: To sell the same or any part thereof for cash or upon credit and to convey the same and receive. the proceeds, rents, profits and income of the same, and to apply the same (1st) to the necessary and proper expenses in managing and developing the said property and selling the same advantageously, together with taxes and assessments thereon; and (2nd) to the payment of the principal and interest of the . indebtedness secured by the two mortgages described in said deed, and to the further indebtedness of $4,489.86 advanced and to be advanced by said George Bliss, and to distribute the surplus, if any, pro rata to the persons who shall produce certificates signed by the said Bliss as Trustee of their interest in said property and in the surplus to arise from the sale thereof."

Certain certificates of interest were issued by George Bliss prior to his death, which occurred on September 1, 1897. Previously, on the 23d day of December, 1896, so much of the property conveyed to

Bliss by Stedman as had not been already disposed of was sold pursuant to judgments in actions brought for the foreclosure of the two mortgages mentioned in the deed from Stedman to Bliss, and in the certificates above referred to; resulting in a deficiency in each case aggregating together the sum of $5,974.89. On March 20, 1897, Mr. Bliss sent a statement in writing of his dealings with the property down to the 1st of January, 1897, to Mrs. Kate M. Shaw, one of the certificate owners, which showed a balance in his hands of $316.88, or, if the Grosjean purchase—which was some property purchased by Bliss and adjoining the Stedman property—be eliminated, there was in his hands $3,956.88. As against this amount, we have the deficiency judgments for which he was liable under the provisions of the judgments, amounting to $5,974.85. It further appeared from the deeds of the referee on the foreclosure sales that Mr. Bliss purchased property covered by one of the foreclosed mortgages, and that Henry H. Porter bought the property foreclosed under the other mortgage. Mr. Porter, who at the time of the trial of this action was one of the executors of Mr. Bliss, has since died.

There is no serious dispute but that the properties were purchased by and for Mr. Bliss, and his attitude thereafter is indicated by this extract which we take from one of his letters:

"As I purchased the property on the foreclosure sale, if I treat that as purchased for myself individually, I have no right to make any claim on account of these expenses in the foreclosure, but if the property may still be treated as held for you, then I should be reimbursed those moneys as I have actually paid out the money.".

Mrs. Shaw and the other certificate holders, who are now represented by the plaintiff, elected to regard the property as still part of the trust property; and it is to obtain possession of this realty, together with any moneys resulting from the sale of any of the lands that may have been made by Mr. Bliss, that the plaintiff brings this action against the defendants for an accounting.

Upon the trial the defendants introduced the surrogate's decree passing their accounts as executors, and in terms discharging them, and this was accompanied by the executors' statement that they had no funds of the estate in their hands, having complied with the terms of the decree as to distribution. The learned judge at Special Term concluded that the defendant executors should account "for all the acts and doings of said George Bliss as such trustee, and for the acts and doings of said defendants as executors as aforesaid of said George Bliss, deceased, in relation to said trust estate," and it is from the interlocutory judgment directing such account and a reference that this appeal is taken.

In determining the propriety of the interlocutory judgment as made, we deem it only necessary to pass upon one of the appellants' objections, which consists of the contention that, as against them in their executorial capacity, and upon the facts appearing at the trial, the complaint should have been dismissed. In denying this motion, and in the opinion of the learned trial judge, reliance was placed upon the two cases of Walton v. Walton, 4 Abb. Dec. 512, and Squire v. Bugbee, 65 App. Div. 429, 72 N. Y. Supp. 1023. In the Walton

Case it was held that an administrator de bonis non can maintain an action against the personal representatives of an executor who had died without applying assets collected, to compel an accounting and delivery of such assets. Therein a demurrer admitted the allegations of the complaint, from which it appeared that there was property unadministered of the original testator in the hands of the defendant; and hence the plaintiff, as administrator de bonis non, could maintain an action to recover their possession for the purpose of administering them. And in Squire v. Bugbee, supra, it was held that the residuary legatees could not maintain an action against the executor of the executor of their deceased testator, but that an administrator with the will annexed could alone bring the action. The principle of both cases is that on the death of the executor or administrator the title to unadministered assets of the estate passes to the administrator de bonis non, who alone was entitled to its possession.

We agree with the learned trial judge that the plaintiff, as the trustee appointed in the place and stead of George Bliss, deceased, could maintain an action against proper parties; but the question which we are called upon to consider is whether, upon the facts here appearing, such action could be brought against the defendants, who were the executors of the deceased trustee. This necessarily involved a determination whether, after executors have accounted and been formally discharged, and it is shown that they have no assets in their hands, they can be compelled to account not alone for their own acts in respect to such of the trust property as, without notice of the trust, came into their hands, and has been distributed under the decree discharging them, but also for the acts of the deceased trustee in reference to such trust property.

The executors of Mr. Bliss had rendered their account, and a decree formally discharging them had been made, and it further appeared that there were no funds or property of his estate in their hands. It was not shown that the executors received any of the trust property as such, nor that they had any notice of the claims of the certificate holders now represented by the plaintiff. On the contrary, it appeared that they had duly published notices for the presentation of claims, and no one representing any beneficiary or certificate holder under the trust presented any claim down to the time that the decree discharging the executors was entered.

The binding force and effect of a surrogate's decree, and the extent to which a formal discharge acts to protect the executor from subsequent attacks, have been discussed in the authorities; and, while none of the cases in which the question has been raised is precisely like the one at bar, they are instructive, as pointing out the force and effect that should be given to a decree discharging executors. In Olmstead v. Latimer, 9 App. Div. 163, 41 N. Y. Supp. 44, which was modified in the Court of Appeals (158 N. Y. 313, 53 N. E. 5, 43 L. R. A. 685), but not upon the ground we are discussing, it was said:

"The fault of this argument lies in the assumption that a claim against a deceased person must be presented to the administrator during the advertised period, or otherwise is barred. Such is not the statute. If the creditor fails to present his claim in time, the administrator is not chargeable with assets

he may have paid in settlement of debts or have distributed. Code Civ. Proc. § 2718. This is the only effect of such a failure. Id. § 1837. The creditor may wait as long as he pleases, provided he keeps within the statute of limitation, and then proceed against the next of kin or heirs at law if there be a deficiency in person."

And in Mahoney v. Bernhard, 45 App. Div. 499, 63 N. Y. Supp. 642, this court said:

"The applicants also contend that the executorships created by the will of the stockholders Clausen and Cardwell were ended by the surrogate's settlement of the accounts of their executors. This view is also, we think, erroneous. Section 2742 of the Code of Civil Procedure provides what shall be the effect of the judicial settlement of an executor's account. His final discharge is not in terms provided for. Nor was it here decreed. It is true that when executors, under a surrogate's decree upon their accounting, turn over to themselves, as trustees, the balance of the estate found to be in their hands, it is tantamount to a discharge with respect to the property so turned over. But the executorial functions are not absolutely determined thereby, and we cannot at all agree to the appellants' proposition that thus 'the executors become nonexistent.' They were, in legal intendment, discharged pro tanto. 'Other assets,' however, as Mr. Redfield, in his work on the Law and Practice of Surrogates' Courts (4th Ed.) p. 788, correctly says, 'may be realized and new liabilities incurred, and as to those the executorial duty continues.'"

These decisions, in effect construing the provisions of the Code of Civil Procedure bearing upon the subject, show that with respect to property turned over to creditors and beneficiaries as provided in a decree, and with respect to the administrator of the estate up to the entry of a decree, the decree is binding, and to that extent is a discharge. The decree, however, is not the termination or ending of the executorial duties, in the sense or to the extent that, with respect to other assets that may be realized, and in connection with which new liabilities may be incurred, executors may not be compelled to account. In Redfield on Practice in Surrogates' Courts, § 1077, it is said:

"As a general rule, where an account of an executor has been judicially settled, it may be presumed that he has accounted for all property that came into his hands, and a party who seeks to compel a further accounting should present a clear case before the application will be granted."

In the case at bar we are not required to rely upon any presumption, because the uncontradicted evidence is that all the assets that came into the hands of the defendant executors have been accounted for, and that thereafter no assets were realized, nor at the time of the trial did the defendants have any property of their testator in their hands. It appears that the defendants accounted for all the assets of the estate of Mr. Bliss which came into their hands, and, without knowledge of the claims which are now made with respect to the trust property, or its existence as a separate fund in the possession of Mr. Bliss at the time of his death, they have, under the surrogate's decree, distributed the assets which came into their hands. We think, therefore, that the formal discharge contained in the decree protects them from further liability to account to the plaintiff, in the absence of any proof which would show either knowledge on their part of the existence of the trust fund, or that any such fund ever came into their hands, or that they had any assets out of which the claims of the certificate holders could be paid. The plaintiff's remedy seemingly would be against

·those who, under the decree of distribution, received any portion of ·the trust fund.

For the failure, therefore, of the plaintiff, as against these defendant executors, to present facts sufficient to constitute a cause of action, we think the motion to dismiss the complaint should have been granted. It accordingly follows that the interlocutory judgment appealed from should be reversed, and a new trial ordered, with costs to the appellants to abide the event. All concur.