## In the Matter of the Estate of MARY ANN KELLY, Deceased.

Surrogate's Court, Wayne County, July 19, 1932.

*Hamn & Brandt,* for the executor.

*William Johns,* for the special guardian.

GILBERT, S. This is a proceeding brought by the executor of the estate of Mary Ann Kelly for leave to sell decedent's real estate for the purposes of distribution and for the construction of paragraph second of the will of the decedent.

The decedent died August 29, 1927. Her will was duly admitted to probate by this court on October 18, 1927, and letters testamentary were issued on that date to Ambrose Kelly, the petitioner herein, a son of the decedent. The executor entered into the performance of his duties and thereafter and in the month of July, 1928, a proceeding was commenced for a judicial settlement of the account of the executor, and on the 31st day of July, 1928, a decree of this court was entered approving the account filed and directing the distribution of the personal estate according to the terms of

the will. No mention is made in the account filed in the proceeding of 1928 of any real estate of the decedent and it appears that all claims and expenses of administration had been paid out of the personal estate. The decedent left a parcel of real estate which passed under the terms of decedent's will to certain designated beneficiaries. Among the persons entitled, no matter what construction is placed upon the will, are certain infants, and an order of this court is now sought directing a sale of the real estate for the purpose of distribution only among the persons found to be entitled to the proceeds.

At the outset, the special guardian appointed by this court to protect the interests of the infants challenges the jurisdiction of the court at this time to direct a sale or to construe the will, basing his objections on two grounds:

*First.* That a proceeding to sell real estate for the purpose of distribution must be brought prior to or upon the judicial settlement of the accounts of an executor or administrator;

*Second.* That the court has no jurisdiction to entertain a construction proceeding in view of the fact that a judicial settlement of the estate was had in 1928 and that such a proceeding must be brought before judicial settlement of an estate.

Article 13 of the Surrogate's Court Act governs proceedings for the sale of real estate in the Surrogate's Court. Sections 233, 234 and 236 of said article as in effect in 1927 are applicable to this proceeding.

Subdivision 6 of section 234 provides for the sale of real property for the purpose of distribution where any of the parties are infants, etc., either prior to or upon a judicial settlement of the account of the executor or administrator. Section 233 forbids a sale of real estate for the purpose of satisfying any claim, debt or demand, unless the proceeding is commenced within eighteen months from the date when letters first issue, or unless the relief is asked for during the pendency of a proceeding for judicial settlement of the accounts of an executor or administrator, and in the latter case only in the event the real estate has not been aliened or incumbered prior to the institution of the proceeding. Section 236 specifies the procedure to be followed by an executor or administrator seeking such an order and provides that the proceeding may be brought at any time after his appointment and qualification, excepting as the time for making such application may be limited by the provisions of section 233. An examination of section 233 as to time limitations, so far as they apply to an executor or administrator, would indicate that, in order to sell for the purpose of paying a claim, debt or demand, a proceeding shall be brought either within

eighteen months from his appointment or, if that period has expired, during a proceeding for a judicial settlement of his accounts. There seems to be no time limitation fixed in section 233 within which an executor or administrator shall institute a proceeding for the sale of real property for the purpose of distribution. (*Brennan* v. *Adler*, 190 App. Div. 589; *Matter of D'Andrea*, 118 Misc. 541.)

All debts, expenses and claims of every kind have been paid by the executor of this estate; he has distributed all personal property pursuant to the decree of 1928; there is no reason for a judicial settlement of his account at this time as he has nothing in his hands for which to account. It would seem, therefore, that the present proceeding is not brought for an accounting and for the sale of real estate incidental thereto, but is a separate and distinct proceeding in and of itself. Has it warrant in law? Section 236 of the Surrogate's Court Act seems to dispose of this question in the affirmative unless, by reason of the accounting in 1928, the executor has lost all right or authority to take any action in reference to the estate.

It is stated in volume 4 of Heaton on Surrogates' Courts, fifth edition, at page 280, that a decree of judicial settlement is not the termination or ending of the duties of the representative in the sense or to the extent that, with respect to other assets that may be realized and in connection with which new liabilities may be incurred, the representative may not be compelled to account (*Rosen* v. *Ward*, 96 App. Div. 262, and *Mahoney* v. *Bernhard*, 45 id. 499); that the representative is always in office for the purpose of performing any duties which require his attention; that he may at any time receive new assets, make a new inventory, and have another judicial settlement. Section 274 of the Surrogate's Court Act provides that a decree upon a judicial settlement is conclusive against all parties against whom jurisdiction was obtained as to all matters embraced in the account and decree. "A judicial settlement" of an account is defined in section 314 of the Surrogate's Court Act as a decree of a Surrogate's Court whereby the account is made conclusive upon the parties to the proceeding.

It is very apparent from the statute and decisions that, in the technical sense, there is no such proceeding as a "final accounting" or "final" judicial settlement of the accounts of an executor or administrator.

It is obvious that this proceeding is brought at this time as a short cut to, and an inexpensive manner of, disposing of decedent's real estate. The devisees are many and include infants. Benefits from the devise can only be enjoyed from a sale of the property and distribution of the proceeds to those entitled. If this court

has no jurisdiction in the matter, the alternative presented to the devisees is a partition action with its attendant expenses, to prevent which, according to a note of the revisers of 1914, was the reason for the insertion of subdivision 6 of section 234 of the Surrogate's Court Act in the law.

If a sale is directed, an accounting by the executor must follow, which would bring the proceeding within the provisions of section 236 of the Surrogate's Court Act, which apparently embraces and contemplates a special proceeding brought for the purpose. The petition filed herein might also be construed as a petition for an accounting and for the sale of real estate in connection therewith. This interpretation would conform more to the provisions of section 233 of the Surrogate's Court Act.

It is undoubtedly true that no relief is sought in the proceeding now instituted which might not be granted by the proper proceedings in another court, but that fact, of itself, is no sufficient reason why this court should not dispose of the matter under the jurisdiction we hold to be conferred by the sections of article 13 of the Surrogate's Court Act.

Coming now to the question of jurisdiction to construe decedent's will. The special guardian bases his objection to the jurisdiction of this court to construe the will at bar on the ground that a judicial settlement has been had and that a construction proceeding must be brought prior to or upon a judicial settlement. He cites as an authority for this objection *Matter of Brown* (133 Misc. 587), where it is said that " it would seem that a proceeding to construe could be brought at any time prior to, or upon, judicial settlement, whenever occasion requires; " and he contends that section 205 of the Decedent Estate Law (added by Laws of 1920, chap. 919) provides the remedy. Subdivision 8 of section 40 of the Surrogate's Court Act, together with section 145 of the Surrogate's Court Act, confers authority on the Surrogate's Court to construe wills. There seems to be no limitation as to time in the authority conferred by these sections. The objection of the special guardian, if well taken, is overcome by the fact that a judicial settlement will necessarily follow the sale of the real property in this proceeding. However, the wording of the sections above referred to is clear and concise and there is no apparent reason to restrict or confine its interpretation. Under the wording of section 145 the surrogate is not absolutely bound to entertain the application for a construction of a will, and there are conceivable cases where he might refuse to do so where the application is not made in good faith or is frivolous. Certainly the case at bar does not come within such an exception.

The decedent's will was executed on April 14, 1924. It was

apparently drafted by a layman and presents another example of the danger and difficulty resulting from the efforts of the layman to assume the work of one trained in the legal profession. Paragraph second is typewritten and the work of the draftsman and it is this paragraph which is sought to be construed. It reads as follows: " I direct that each of my childred is their turn have Mass said in memory of myself and also of my husband Patsey Kelly. I give devise and bequeth all my property both real and personal, except bedding, to be divided equally between James Kelly my son, Helen Rosser, my daughter, Marguret Osborn, my daughter and Marie Slocumb, my daughter, and Ambrose Kelly my son. In case any of my childred should have no children then at their death his or her part to be divided between the children then living. I direct that the bedding be divided equally between my daughters. I also direct that my family cemetery lot be taken care of by my childred, each in their turn. ·Any of my childred are given the privilage of useing the remaining portion of the cemetery lot."

The complete and exact text of paragraph second is quoted as it appears. It is evident from the spelling and punctuation that no great weight can be given to the structure of the paragraph in determining the intention of the testatrix or as an aid to the correct interpretation.

It is a general principle or rule of construction that where a will speaks of the death of a devisee without issue it refers to such death occurring during the lifetime of the testator. · (*Brown* v. *Gardner*, 233 N. Y. 261; *Lawrence* v. *Calam*, 236 id. 168; *Fowler* v. *Ingersoll*, 127 id. 472; *Vanderzee* v. *Slingerland*, 103 id. 47; *Quackenboss* v. *Kingsland*, 102 id. 128.) It is a rule not without limitations, however, and which does not govern when evidence is found in the will that the time of death referred to is death occurring either before or after the death of the testator.

This rule seems to be the only rule of construction involved in the case at bar and with that fact in mind it is necessary to study the second clause of decedent's will and interpret the same by applying this legal principle as stated in the above-mentioned authorities.

The will says: " I give devise and bequeth all my property both real and personal, except bedding, to be divided equally between," and then specifies the five children of the testator by name. To this point it is an absolute provision, no use or income having been mentioned nor any distinction having been made by the testatrix in respect to the shares of any of her children. Then follows this sentence: " In case any of my childred should have no children then at their death his or her part to be divided between

the children then living." The special guardian contends that the phrase " then at their death " refers to death at any time, either before or after the death of the testatrix; that it is a reference to time and not to the event. If we adopt that construction, and assume the death of one of the children without issue before the death of the testatrix, a literal interpretation of the clause would require an immediate division of this share among the other children which would, of course, be impossible of performance as the testatrix would still be living. It is evident, therefore, that this phrase, " then at their death," does not refer to time but is reference to an eventuality and that the sentence to this point could properly be construed as though it read, " In the event that any of my children should die without leaving issue." Adopting and substituting this as the proper interpretation of the phrase the sentence would read: " In the event that any of my children should die without leaving issue ' his or her part to be divided between the children then living.' " With this interpretation of the phrase, it seems to the court that the three words at the end of the sentence, " children then living," clearly refer to the remaining children living at the death of the testatrix.

There is no specific wording in the second paragraph of the will which would indicate an intent to limit the share of any of decedent's children who survived her to a life use and there is no apparent reason for so doing. In the cases above cited to illustrate the rule of construction applicable it will be found that in the cases which have held that the death referred to meant death either before or after that of the testator, there has been a life use or some other right to income provided for. Those cases hold that only " slight evidence " is needed to require such a construction.

In the case at bar, if the interpretation given by this court to the words used is a fair interpretation, no evidence is found that would justify a modification of the general principle of interpretation long established by the authorities.

It is the conclusion of this court that that portion of paragraph second of decedent's will commencing with " I give devise," etc., and ending with " children then living," should be construed as though it read as follows: " I give, devise and bequeath all my property, both real and personal, except bedding, to be divided equally between James Kelly, my son, Helen Rosser, my daughter, Marguret Osborn, my daughter, Marie Slocumb, my daughter, and Ambrose Kelly, my son. In the event that any of my said children should die without leaving issue, his or her share shall be divided between my children living at my death." .

Upon the death of the testatrix the real estate in question vested

in the children of the testatrix then living and the issue of any children of the testatrix who predeceased the testatrix leaving issue her surviving.

A decree may be entered directing that the necessary steps be taken for a sale of the decedent's real estate for the purpose of distribution and construing paragraph second of the will of decedent as hereinabove indicated.