## WALTON *v.* WALTON.

June, 1864.

An administrator *de bonis non* can maintain an action against the personal representative of an executor who had died without applying assets collected, to compel an accounting and delivery of such assets.*

* Followed in Clapp *v.* Meserole, vol. 1, of this series, p. 362.

The complaint in such an action need not allege that the assets ever came into the hands of the defendant.

Such action is properly brought against the executor of the executor, in the representative capacity.

Horatio N. Walton, administrator *de bonis non,* sued Sarah P. Walton, executrix, &c., of William B. Walton, deceased, in the supreme court, for an account and payment of assets.

Jonathan Walton, deceased, left William B. Walton his executor, who, after receiving assets of the estate, died, leaving the defendant his executrix. The plaintiff was appointed administrator, *de bonis non,* of the unadministered assets of Jonathan, the first decedent. He thereupon demanded the assets from the executrix of William B., the deceased executor; and the demand being refused, brought the present action.

The complaint alleged that William B. Walton, deceased, was the sole surviving executor of Jonathan Walton. That he died in 1851, "leaving a large portion of the estate of Jonathan Walton unadministered."

That, after his death, administration was duly granted to plaintiff, " of the goods, chattels, credits and effects which were of Jonathan Walton, deceased, with his will annexed, which were left unadministered by William B. Walton, deceased. That said William B., as such surviving executor," had in his possession for the purpose of administration, a large amount of assets, the property of the estate of said Jonathan, and described in a schedule.

That at the time of said William B.'s death the said assets and proceeds thereof remained in his hands as such executor unaccounted for. That defendant was executrix of of the will of said William B., and the action was brought against her in such capacity. By reason whereof plaintiff insisted, that as such administrator, he had a right to have an account taken of such assets and proceeds so remaining unadministered, and a decree for the delivery and payment to him as such; but defendant as executrix of said William B., neglected and refused to account with plaintiff for such unadministered assets.

The supposed unadministered assets described in the schedule annexed to the complaint consisted of three classes :

IV.—33

Walton *v.* Walton.

1. Moneys received by William B. Walton, as such executor, in payment of demands belonging to Jonathan Walton, at the time of his death.

2. Real estate purchased by William B., as such executor, on his foreclosure on a mortgage, belonging to Jonathan, at the time of his death.

3. Two bonds and a note or their proceeds, executed by William B. to Jonathan, in his lifetime.

Defendant demurred to the complaint on the ground that the facts did not constitute a cause of action. Judgment was ordered for defendant on the demurrer, at special term.

*The supreme court* at general term affirmed the order on appeal, being of opinion that an administrator *de bonis non*, of a testator, appointed after the death of the sole executor of his will, could not maintain an action against the executor of the deceased executor's will for an account of moneys collected by the first executor, on demands due to his testator, which were in the hands of the first executor, unaccounted for at the time of his death, but which moneys are not alleged to be distinguishable from the moneys of the executor who collected them.

The opinion of the supreme court will be found in 2 *All. Pr. N. S.* 430. The plaintiff appealed to this court.

*T. B. Mitchell*, for the plaintiff, appellant, argued that both by the statutes of this State, 3 *R. S.* 5 ed. 202, § 6 ; 156, § 17 ; 162, §§ 44, 45 ; 747, §§ 11, 13, 17, 18 ; *L.* 1858, ch. 314, and by general principles, *Will. Eq. Jur.* 560; 2 *Hill*, 180, 225 ; 13 *Wend.* 591; 3 *Edw. Ch.* 203 ; 20 *How. Pr.* 354 ; 2 *Brock.* (*Va.*) 159, 164; 5 *Rand.* 51; 5 *Harr. Del.* 182, defendant was liable, in her representative capacity, and that plaintiff had power, as administrator *de bonis non*, to sue for an account.

*S. W. Jackson*, for defendant, respondent.—1. The possession of assets by the deceased executor is no cause of action in plaintiff ; nor is it alleged that defendant is in possession, and, if she were, a conversion would render her liable individually, not in her representative capacity.

2. The right to an account is not in plaintiff, but only in

creditors and legatees. 2 *Bac. Abr.* 20; *Salk.* 306; 1 *Williams on Exec.* 781; Conklin *v*. Egerton, 21 *Wend.* 430; Gilchrist *v*. Rea, 9 *Paige*, 66; Trustees, &c., *v*. Kellogg, 16 *N. Y.* 83, 90; Dakin *v*. Demming, 6 *Paige*, 95; Neale *v*. Hagthorp, 7 *Gill & J.* 13; S. C. 3 *Bland*, 551; Hagthorp *v*. Hook, 1 *Gill & J.* 270; Coleman *v*. McMurdo, 5 *Rand.* 51; Morris *v*. Morris, 4 *Gratt.* 293; Cheatam *v*. Burfoot, 9 *Leigh.* 580; Dykes *v*. Woodhouse, 3 *Rand.* 287; 7 *J. J. Marsh.* 128; Bradshaw *v*. Commonwealth, 3 *Id.* 632; Oldham *v*. Collins, 4 *Id.* 49; Felts *v*. Brown, 7 *Id.* 147; Slaughter *v*. Froman, 5 *Monr.* 19; Carrol *v*. Connet, 2 *J. J. Marsh.* 195; Graves *v*. Downey, 3 *Monr.* 353; Lawrence *v*. Lawrence, 6 *Litt.* 123; Abney *v*. Pickett, 21 *Ala. N. S.* 739; Chamberlain *v*. Bates, 11 *Ala.* (2 *Porter*), 550; Swink *v*. Snodgrass, 17 *Ala. N. S.* 653; Nolly *v*. Wilkins, 11 *Id.* 872; Harbin *v*. Levi, 6 *Id.* 399; Caller *v*. Boykin, *Minor*, 206; Searles *v*. Scott, 14 *S. & M.* 94; Prestidge *v*. Pendleton, 24 *Miss.* 80; Byrd *v*. Holloway, 6 *S. & M.* 323; Prosser *v*. Yerby, 1 *How. (Miss.)* 87; Stubblefield *v*. McRaven, 5 *S. & M.* 130; Kelsey *v*. Smith, 1 *How. (Miss.)* 68; Gamble *v*. Hamilton, 7 *Miss.* 469.; Miller *v*. Womack, 1 *Freem. Ch.* 486; Sloan *v*. Johnson, 14 *S. & M.* 47; Smith *v*. Carrere, 1 *Rich. Eq.* 123; Villard *v*. Robert, 1 *Strobh. Eq.* 393; Miller *v*. Alexander, 1 *Hill. Ch.* 25; Thompson *v*. Buckner, *Riley Ch.* 33; contra in Quince *v*. Quince, 1 *Murph.* 160; Satterwhite *v*. Carson, 3 *Ired. L.* 549; Horskins *v*. Williamson, *T. U. P. Charlt.* 145; Thomas *v*. Hardwick, 1 *Kelly*, 78; Paschal *v*. Davis, 3 *Id.*, 256; Shorter *v*. Hargroves, 11 *Ga.* 658; Knight *v*. Lasseter, 16 *Id.* 151; Arline *v*. Miller, 23 *Id.* 330; Oglesby *v*. Gilmore, 5 *Id.* 56; Hardwick *v*. Thomas, 10 *Id.* 266; Gilbert *v*. Hardwick, 11 *Id.* 599; Young *v*. Kimball, 8 *Blackf.* 167; but see State *v*. Porter, 9 *Ind.* 342; Marsh *v*. People, 15 *Ill.* 285; Rowen *v*. Kirkpatrick, 14 *Id.* 1; Newhall *v*. Turney, 14 *Id.* 338; Weld *v*. McClure, 9 *Watts*, 495: Little *v*. Walton, 23 *Pa.* 164; Potts *v*. Smith, 3 *Rawle*, 361; Alsop *v*. Mather, 8 *Conn.* 584; Grout *v*. Chamberlin, 4 *Mass*, 613. And the statutes of this State have not altered the rule. See Goodyear *v*. Bloodgood, 1 *Barb. Ch.* 617.

BY THE COURT.—HOGEBOOM, J.—If this case turns upon

the allegations in the complaint, independent of those con-
tained in the annexed schedule, I have no doubt that the
action is well brought; and I do not see that they are so far
varied by the contents of the schedule that that should alter
the results at which we should otherwise arrive.   Those alle-
gations are explicit, that William B. Walton, had, at his
death, in his hands, a large portion of the assets of Jonathan
Walton unadministered; that the plaintiff had been duly
appointed administrator of such unadministered assets, and
that the defendant has been duly appointed and qualified as
executrix of the last will and testament of William B. Walton,
deceased, and refuses to account for such unadministered
assets.

*Prima facie* and unexplained, I do not see why this does not
make out a perfect cause of action, in favor of the plaintiff
against the defendant.   As there is no averment in the com-
plaint that these assets have been collected, nor in either the
complaint nor the schedule, that the debts and expenses of
administration of the estate of Jonathan Walton have been
defrayed, there is nothing to show but that these assets are
absolutely needed for such purpose; and they can only be
applied to that object by the duly appointed legal representa-
tive of the estate of Jonathan Walton, deceased.

Independent of this, and for all legal purposes, the plaintiff
is the sole legal representative and possessor of the unadmin-
istered assets of said deceased, and is entitled by law to the
custody of the property and the possession of the assets, for
the purpose of administration.   He may bring suits to recover
the property against any person in possession of it; trover or
replevin, if it exists in specie in the condition it was at
Jonathan Walton's death, or assumpsit, or other appropriate
action, if it has been converted into money.

It may well be presumed from the allegations in the com-
plaint, that the unadministered assets are in their original
condition,—that is, in the shape they were at the death of Jon-
athan Walton.   If so, there does not seem a possible doubt
that the plaintiff is entitled to these from any and every per-
son, in whose possession they may be.   They belong to the
the plaintiff as owner,—owner in trust, it is true, for the pur-

pose of administration, but, nevertheless, owner in fact. They are unadministered assets; they require administration; and no person in the world can perform this office upon them except the plaintiff. Indeed, if they have been rightfully or wrongfully converted into money, they are nevertheless unadministered assets of Jonathan Walton, deceased, are so charged to be in the complaint, and so admitted to be by the demurrer; and, therefore, rightly belong to the plaintiff, and to the plaintiff alone. Even if they had been rightfully converted into money by the executional act of William B. Walton, this is but a partial administration of them; they have not been fully administered; we are bound to assume that they require further administration, for they are charged and admitted to be unadministered assets; and in the face of such an admission, we are not permitted to say that they require no further act of administration. They will be absolutely indispensable to pay debts of Jonathan Walton, deceased, and no one can employ them legitimately for such a purpose, except the plaintiff.

Wherever, therefore, they are found, in whosesoever possession they may be, such person is bound to deliver them over into the possession of the plaintiff.

Regarding this right of the plaintiff, therefore, as absolute and undeniable, it seems to follow, as a necessary consequence, as has been just stated, that every person in whose possession they may be, is bound to deliver them up, or account therefor; and, therefore, that the defendant is in no legal condition successfully to resist a demand of the same.

But conceding the plaintiff's right to the possession of unadministered assets, it is averred that the action is not well brought against the defendant, for these reasons. 1. Because William B. Walton was, before his death, rightfully in possession of them, rightfully converted them into money, if he did so convert them, and rightfully retained them, for the purpose of paying debts and legacies, and distributive shares of Jonathan Walton's estate. 2. Because there is no allegation in the complaint that these assets, in whatever shape they may be, ever came into the personal possession, custody or control of the defendant. 3. Because, if they are in the defendant's

possession, the action should be against her personally, and not as representative of the estate of William B. Walton, deceased.

It may and must be conceded, that William B. Walton, as executor of Jonathan Walton, had a right to the possession of the assets, a right to convert them into money, and a right, up to the period of his death, to appropriate them to all legitimate purposes of administration of the estate. But this latter office he did not perform; and if he had converted a portion of the assets into money, he had only partially administered those assets; and assets are unadministered, in the sense of the law, until the whole work of administration upon them is consummated. Administration of assets implies such a complete disposition of them as not only to collect them from the debtor of the estate, if they are in that condition, but finally to place them in the hands of the creditor, legatee or distributee to whom, after undergoing the process of administration, they finally belong. As before stated, they had not undergone this latter process; and we are obliged, in the state of facts in which the parties have presented the case to us, to assume that the assets required further administration.

While, then, it might safely be conceded that William B. Walton might rightfully retain the assets in his hands, even up to the period of his death, for the purpose of paying debts, legacies, and distributive shares, that right ceased at his death. It did not devolve upon his executor, but upon his successor in the trust; it did not go to the defendant, but to the plaintiff. The plaintiff, and not the defendant, succeeded him in the administration of the estate of Jonathan Walton.

The state of the assets at the death of William B. Walton, as developed in the schedule annexed to the plaintiff's complaint is properly classified in the defendant's points under three several heads.

1. Moneys received by William B. Walton, as executor of Jonathan Walton, received in payment of bonds, notes and other demands, belonging to the said Jonathan Walton at the time of his death.

As to these I have already expressed the opinion that they were only partially administered; that they were still, in the

eye of the law, considered in connection with the admitted allegations in the complaint, unadministered assets; that in the latter character they necessarily passed, or rightfully would pass, into the legal custody and control of the plaintiff.

2. Two bonds and a note, executed by the said William B. Walton, to the said Jonathan Walton in his lifetime, or the amount thereof.

It does not expressly appear whether these had or had not been converted into money. If they had not been, the plaintiff was clearly entitled to the securities themselves, as a portion of the unadministered assets of Jonathan Walton. If they had been converted into money, then they are placed in the same category with the other partially administered assets referred to, of the same estate.

3. Real estate bid in by William B. Walton, as executor of Jonathan Walton, deceased, on a foreclosure by William B. Walton, as such executor, of a mortgage executed on said real estate to Jonathan Walton; such real estate, subsequent to such bid, being occupied by William B. Walton at the time of his death, and by the defendant, as his executrix, subsequently, and being still occupied by the latter.

This purchase was necessarily, in judgment of law, as it appears to have been, according to the intention of the purchaser, a purchase for the benefit of the estate of Jonathan Walton. Such estate, or its legal representatives, would have a right to elect to take the benefit of such purchase, or to hold the purchaser responsible for the value of the property, or the amount of the investment. Such election has not been made. And the plaintiff, through the instrumentality of the court, has a right to hold the estate of William B. Walton accountable in some one or other of these modes for his property, and to require an account of the moneys due on the mortgage securities, an account of the rents and profits, and of the value of the estate.

Whether, therefore, we regard the assets in their unadministered form as charged in the body of the complaint, or in their partially administered condition as set forth in the schedule appended to the complaint, there seems to be abundant

aliment for such account as is demanded by the complaint in this action.

It is objected that there is no allegation in the complaint that these assets ever came into the possession of the defendant. It is not necessary there should be. It is sufficient that they were in the hands of William B. Walton, unadministered, at the time of his death. That makes his estate liable to account for the same. The defendant is the representative of that estate, and as such, the proper party to answer such a charge. But I think the legal presumption without an express allegation is that the property in the possession of William B. Walton, at the time of his death, passed into the hands of his executrix, and that if, in fact, it be otherwise, it is with her to rebut that legal presumption by an express allegation to that effect in the answer to the complaint. Further than this, it expressly appears therein, by the schedule annexed to the complaint, that she is in possession of them as his executrix of the real estate bid in on the mortgage foreclosure, and there is, therefore, a portion of the property for which she is liable to account.

3. It is further objected that the plaintiff's remedy, if available against the defendant at all, is so only against her personally, and not as executrix of the will of William B. Walton, deceased. This is not an effectual answer to the whole complaint for two reasons. 1. Because as to such property as was in the hands of William B. Walton unadministered at the time of his death, his estate, and consequently the defendant as executrix, is liable for it. If, therefore, the defendant did not come into possession of the property, the estate, and consequently herself as its representative, is responsible for it as being in the possession of William at the time of his death. If it did pass into her possession, as executrix, there is an increased propriety that as such executrix she should be accountable for it. This is sufficient to show that as to some portion of these assets, she is properly prosecuted as executrix.

Whether as to the other portions of them, for example, goods and chattels, bonds and securities, which are in her hands in specie, in the same condition they were at the death of Jonathan Walton (if there be any such), she may not be liable for

them individually, it is not necessary to determine. I think, however, she would also be liable for them in their representative capacity, for she recovered them as such, she holds them as such, she claims them as such. As to real estate, the charge in the complaint is that she is in possession of it as executrix of William B. Walton, deceased, and so far it seems to be manifestly proper to hold her to account in her representative character.

I, therefore, regard the action as properly instituted, and the complaint as showing a good cause of action. I think the judgment of the special and general term of the supreme court should both be reversed with costs, and judgment should be given for the plaintiff on the demurrer, with leave to the defendant to withdraw the same and answer, on payment of costs.

A majority of the judges concurred in this opinion, H. R. SELDEN, J., dissented.

Judgment reversed, and judgment for plaintiff on the demurrer, with leave to defendant to answer, on payment of costs.