(43 App. Div. 91.)

### DUNNE v. AMERICAN SURETY CO. OF NEW YORK.

(Supreme Court, Appellate Division, First Department.   July 18, 1899.)

1. EXECUTORS AND ADMINISTRATORS—ADMINISTRATOR DE BONIS NON—POWERS —SUIT ON PREDECESSOR'S BOND.

   Code Civ. Proc. § 2606, provides that, where an executor dies, the surrogate court has the same jurisdiction, on petition of his successor, to compel the executor or administrator of decedent to account, that it would have against decedent if his letters had been revoked. Section 2605 empowers the surrogate to compel the person whose letters have been revoked to deliver the property, and generally settle his account. Section 2606 provides that, for the purpose of maintaining an action upon decedent's official bond, a decree against his executor or administrator, rendered upon such accounting, shall have the same effect as if an execution issued on a surrogate's decree against the property of decedent had been returned unsatisfied during decedent's lifetime. Section 2608 provides that, where letters have been revoked by decree of surrogate's court, the successor may maintain an action on his predecessor's official bond, and recover the full value of any property received by the principal and not duly administered by him, and to the full extent of any injury sustained by any act or omission of the principal; the money recovered in such action to be regarded as part of the estate. *Held*, that the administrator de bonis non is exclusively authorized to recover from the sureties of his deceased predecessor for wrongful conversion of testator's property, the proceeds of the property sold being considered as in the hands of the deceased administrator.

2. SAME—LEAVE TO SUE ON BOND.

   Code Civ. Proc. § 2609, providing that where letters are revoked, and no successor is appointed, a person aggrieved, who desires to sue upon the bond, must obtain leave, has no application to the case of an administrator de bonis non appointed to succeed a deceased predecessor, and does not require that, as a condition to a suit on his predecessor's bond, he first obtain consent. ·

3. SAME—ADMINISTRATOR NOT PUBLIC OFFICER.

   Code Civ. Proc. § 1888, requiring leave of court to prosecute official bonds of public officers in general, where special provision is not otherwise made by law, has no application to an action by an administrator de bonis non on the bond of his predecessor; section 1890, which enumerates the officers intended, not including administrators.

4. SAME—EQUITABLE ACTION.

   Consent to bring an equitable action by an administrator against the surety of his predecessor for maladministration need not be first obtained.

5. SAME—NECESSARY PARTIES.

   The administrator de bonis non being the representative of the estate until it shall have been fully administered, next of kin are not necessary

parties to an action against the sureties of his deceased predecessor for maladministration.

Rumsey, J., dissenting.

Appeal from special term, New York county.

Action by Frank J. Dunne, as administrator de bonis non of the estate of Terence A. Macaulay, deceased, against the American Surety Company of New York. From an interlocutory judgment overruling a demurrer to the complaint, defendant appeals. Affirmed.

Argued before BARRETT, RUMSEY, PATTERSON, and O'BRIEN, JJ.

D. J. M. O'Callaghan, for appellant.
Wm. P. Maloney, for respondent.

BARRETT, J. We are all agreed in this case, except as to the question whether it was necessary for the plaintiff to obtain leave to bring the action. It is proper that we should give the reasons which, in the judgment of the majority, call for a different conclusion upon this point from that reached by Justice RUMSEY. A few words, too, may not be inappropriate as to the other questions. Our agreement with Justice RUMSEY as to the plaintiff's right to maintain the action does not rest wholly upon the authority of Walton v. Walton, 4 Abb. Dec. 512. The allegation of the complaint there was that the deceased executor had in his hands, at the time of his death, unadministered assets of his testator. It was held that the administrator de bonis non could recover these assets from the executor of the deceased executor,—in specie, if unconverted; their value, if converted into money. The conversion without an appropriation of the money to the purposes of the estate was deemed but a partial administration. "Administration of assets," said Judge Hogeboom, "implies such a complete disposition of them as not only to collect them from the debtor of the estate, if they are in that condition, but finally to place them in the hands of the creditor, legatee, or distributee to whom, after undergoing the process of administration, they finally belong. As before stated, they had not undergone this latter process; and we are obliged, in the state of facts in which the parties have presented the case to us, to assume that the assets required further administration." The question whether the action could have been maintained for a devastavit was not discussed. Nor was it discussed in Clapp v. Meserole, *40 N. Y. 288. The court there simply held, following Walton v. Walton, that an administrator de bonis non can maintain an action against the representatives of a deceased executor who died without applying the assets which had come to his hands. In the case at bar the allegation is that the deceased administrator converted the proceeds of his testator's property to his own use. There would seem to be no substantial distinction in principle between the cases. In legal intendment, the proceeds of the property sold were here in the hands of the deceased administrator. These proceeds were not administered, in the sense of "administration" as defined in Walton v. Walton. Practically, it is immaterial whether incomplete administration, resulting from the failure

to place these proceeds in the hands of the persons to whom they finally belonged, was caused simply by their retention, or by the administrator's personal use of the funds. It is correctly stated in 2 Am. & Eng. Enc. Law (2d Ed.) p. 1331, that the authority of administrators de bonis non has been extended in the United States far beyond that which was accorded to them at common law, and in many states of the Union it has been expressly held that such an administrator may recover against his predecessor or his predecessor's representatives for any devastavit or maladministration. See cases cited in note 1 of the volume referred to.

We prefer, however, to fortify our conclusion that the plaintiff may maintain this action by a reference to the provisions of the statute. Section 2606 of the Code of Civil Procedure provides that, where an executor or administrator dies, the surrogate's court has the same jurisdiction, upon the petition of his successor, to compel the executor or administrator of the decedent to account, which it would have against the decedent if his letters had been revoked by a surrogate's decree. Upon such revocation of letters the surrogate has full jurisdiction to compel the person whose letters have been revoked to account for or deliver over money or other property, and generally to settle his account. Section 2605. Section 2606 further provides that:

"With respect to the liability of the sureties in, and for the purpose of maintaining an action upon the decedent's official bond, a decree against his executor or administrator, rendered upon such an accounting, has the same effect as if an execution issued upon a surrogate's decree against the property of decedent had been returned unsatisfied during decedent's life-time."

Section 2608 then provides:

"Where letters have been revoked by a decree of the surrogate's court, the successor of the executor, administrator, or guardian, whose letters are so. revoked, may maintain an action upon his predecessor's official bond, in which he may recover any money, or the full value of any property, received by the principal in the bond, and not duly administered by him; and to the full extent of any injury, sustained by the estate of the decedent or of the infant, as the case may be, by any act or omission of the principal. The money recovered in such action is regarded as part of the estate in the hands of the plaintiff, and must be distributed or otherwise disposed of accordingly."

It is apparent from these provisions that the purpose of the legislature was to leave no further trace in the law of this state of the common-law rule that assets converted by the executor or administrator were, technically speaking, administered. We agree with the learned author of the notes to Hodge v. Hodge (Me.) 40 Lawy. Rep. Ann. 54 (s. c. 38 Atl. 535), that "in 1880 the provisions of the Code authorized a recovery by the administrator de bonis non from his predecessor for a balance, or accounting, or conversion, or maladministration." It should be observed in this connection that where letters are revoked, and a successor appointed, no provision is made for leave to sue upon the bond. Section 2608. Where, however, letters are revoked, and no successor is appointed, the person aggrieved, who desires to sue upon the bond, must obtain leave. Section 2609. The reason is obvious. The person aggrieved is not exclusively vested with the cause of action. His ac-

tion is "on behalf of himself and all others interested." The suc-
cessor, however, when appointed, is exclusively vested with the cause
of action. He represents the estate, the creditors, next of kin, and
all persons who may be interested in the estate. By analogy, the
same rule applies in the case of a deceased administrator. Upon
the appointment of his successor, the latter succeeds to all the pow-
ers and duties of his predecessor. The administration of the suc-
cessor is no longer regarded as separate and distinct from the pre-
ceding administration, as it was at common law, but, rather, as a
continuation of it,—the one beginning where the other left off. 2
Am. & Eng. Enc. Law (2d Ed.) p. 1331. The Code, however, makes
one important distinction between a deceased administrator and one
whose letters have been revoked. In the former case, where a suc-
cessor is not appointed, no provision is made for an action upon
the administrator's bond by "persons aggrieved," while in the lat-
ter such provision is made. The Code does not seem to contem-
plate the possibility of failure to appoint a successor to a deceased
administrator. At all events, the effect of this distinction is to limit
an "aggrieved person's" right of action at law upon an administra-
tor's bond to cases of revocation. In the case of death, such a per-
son can proceed at law only through the instrumentality of a suc-
cessor. Neither of these sections, however, has any relation to an
action in equity based upon the impossibility of securing redress
at law. Their significance, so far as concerns the present question,
is only in the plain implication that, when a successor to a previous
administrator is appointed, all rights of action, whether at law or
in equity, either against the predecessor or his personal represen-
tatives, are vested in such successor. The right of action being thus
vested in the successor, to the exclusion of persons interested in
the estate, leave to sue is unnecessary. This would be so even were
the action one at law upon the bond. Justice RUMSEY concedes
that sections 2606 to 2609 of the Code contain no express provision
requiring the successor of a deceased administrator to obtain such
leave. He thinks, however, that it is within the reason of the re-
quirement of section 2609 with regard to an action by "persons ag-
grieved," where no successor is appointed. If so, why did not the
legislature so provide? Such a requirement is hardly the subject
of implication. To say that it is within the reason of the require-
ment of section 2609 is seemingly but another way of saying that
it would have been well for the legislature to have thus extended
that requirement. We think, however, that the omission was in-
tentional and was well advised. The only purpose of requiring leave
to sue was to save sureties from the harassment of unnecessary ac-
tions. Where that annoyance was possible, we find the require-
ment. Where, however, but a single action by a responsible suc-
cessor is contemplated, it is omitted. So we also find it omitted in
section 2607, where a right of action upon the bond is given, with-
out obtaining leave, to the person in whose favor a decree against
the administrator has been granted. It is in fact omitted in every
instance where the right of action is given to a particular individ-
ual or representative of the estate, and it is inserted only where,

in the absence of a representative, all persons interested in the estate are indiscriminately authorized to sue.

The suggestion that the case, on this head, is also within the provisions of section 1888 of the Code, will hardly bear analysis. The article in which this section is found relates to actions upon official bonds. The first eight sections (sections 1880 to 1887) relate to sheriffs, surrogates, and county treasurers,—plainly public officers. Section 1888 then provides for obtaining leave to prosecute the official bonds of public officers in general, where special provision is not otherwise made by law. It is quite clear from the context that executors and administrators (other, of course, than the public administrator) are not public officers, within the meaning of this section. If they were, it would have been quite unnecessary to enumerate, as was done in section 1890, the officials who are embraced within section 1888, namely, "a receiver, an assignee of an insolvent debtor or a trustee or other officer, appointed by a court or a judge." That an ordinary administrator was not comprehended within the expression, "other officer appointed by a court or a judge," is apparent from what immediately follows, namely, that:

"Where he was appointed by or pursuant to the order of a court, * * * the application for leave to prosecute his official bond must be made to the court by which or pursuant to whose order he was appointed. * * * An action brought as prescribed in this section must be brought in the court to which application is made for leave to bring it."

Thus, administrators could not well have been intended, for no such action can be brought in the surrogate's court, and yet no application for leave to sue can be made in any other court. The provisions of the article relating generally to letters, already referred to, were undoubtedly deemed "special provision made by law" for administrators.

We have thus gone over these Code provisions, quite as though this were an action at law upon the bond. The contention that leave to prosecute the bond was required proceeds solely upon this inaccurate view of the nature of the action. It is essentially an action in equity. It alleges the special circumstances which make it impossible for the plaintiff to obtain against the deceased administrator or his representatives a decree or order of the surrogate's court of the county of New York. It shows that, owing to these special circumstances and this consequent inability, the plaintiff can never point to a literal breach of the condition of the bond. It shows, however, what equity will treat as a breach, in every essential and substantial particular,—that the administrator did not faithfully execute the trust reposed in him as administrator, and that he so conducted himself that no decree can be made or obedience enforced against him or his representatives. The learned counsel for the surety frankly asserted upon the argument that there was here a wrong without a remedy; that the surety could not be made liable in any manner, or under any circumstances, unless there were a literal breach of the precise condition of the bond, namely, "to obey all lawful decrees and orders of the surrogate's court." If he is right in this assertion,—if, indeed, Bischoff v. Engel, 10 App. Div.

243, 41 N. Y. Supp. 815, and Scharmann v. Schoell, 23 App. Div. 399, 48 N. Y. Supp. 306, were not well decided,—then any administrator who leaves the jurisdiction, taking the assets of the estate with him, and dying abroad, penniless, after having squandered such assets, practically nullifies the security given for the faithful performance of his trust. We advert at this time to these considerations for the reason that they lie at the root of the action itself, and yet they constitute the very considerations upon which the court would naturally be moved for leave to bring the present action. Whether there are merits in the plaintiff's alleged equity is something to be determined upon the trial, not upon a preliminary motion for leave to present that equity. There is no more reason for compelling him to apply for leave to bring such an action than there would be for compelling him to so apply before commencing any other action which may be cognizable on his behalf in equity. However the action may be viewed, therefore, that point of demurrer is not well taken.

Our conclusion is that the action is well brought by the administrator de bonis non, and that leave to prosecute the bond was not essential to its maintenance. This conclusion is supported by the following authorities, as well as those already cited: Haines v. Meyer, 25 Hun, 414; Deposit Co. v. Pratt, Id. 23; Williams v. Kiernan, Id. 358. See, also, Harrington v. Keteltas, 92 N. Y. 40; Wiggin v. Sweet, 6 Metc. (Mass.) 194; and 2 Woerner, Adm'n, p. 749.

We may add that, though the bond runs to the people, it so runs in form only, for the benefit of those to whom the right of action thereon is given by the statute. Here, as we have seen, the right of action at law upon this bond is, by the Code provisions, expressly given to the successor of the deceased administrator, upon his obtaining a decree against the latter's personal representatives, as provided in section 2606, supra. It is because this latter prerequisite to the action at law has, by the misconduct of the deceased administrator, been rendered impossible of procurement, that equity lends the plaintiff its aid. In doing so, it but affords him the indemnity which was the essential feature of the contract, and was necessarily in the contemplation of the sureties when they signed it in assumed good faith. In other words, equity enforces the substantial obligation, and relieves the plaintiff from a technical preliminary requirement, which, upon the facts averred, is but purely formal and nonessential. As representative of the estate and of all parties in interest therein, his is the legal right to indemnity, and the maintenance of this action to procure that indemnity in the only possible way is but the equitable sequence to that legal right.

The interlocutory judgment overruling the demurrer was right, and should be affirmed, with costs. All concur, except RUMSEY, J., dissenting.

RUMSEY, J. (dissenting). The complaint alleges that on the 17th of April, 1894, one Terence A. Macaulay, who was also known as Thomas A. Macaulay, died in the city of New York, possessed of certain personal property, among which were two patents issued

by the United States government; that on the 23d of May, 1894, Daniel Macaulay was appointed by the surrogate's court administrator of the estate of the said Terence A. Macaulay, and letters of administration were issued to him; that the defendant gave a bond to the people of the state of New York, containing the usual conditions of administrators' bonds, among which was that the said Daniel Macaulay should faithfully execute the trust reposed in him as administrator, etc. It is further alleged in the complaint that the administrator took possession of and sold one of the patents for the sum of $5,000, which he received, but that, having received the money, he did not faithfully administer it, nor distribute the same, but converted it to his own use, and did not faithfully execute the trust reposed in him as such administrator. It is further alleged that Daniel Macaulay removed with said property to the state of Massachusetts, and died, leaving no property and no personal representative in this state; that on the 12th of September, 1898, the plaintiff was duly appointed administrator de bonis non of the said intestate, Terence A. Macaulay, and has qualified as such. It is further alleged that Daniel Macaulay never accounted as administrator, and that the plaintiff was unable to obtain jurisdiction over his estate for the purpose of compelling an accounting in the surrogate's court, and that he had no adequate remedy at law by which jurisdiction could be acquired to compel an accounting of the proceedings of said deceased administrator. It is further alleged that Terence A. Macaulay, the intestate, owed no debts at the time of his decease. The relief demanded is that the amount due from the said Daniel Macaulay as administrator be ascertained, and that the defendant be adjudged to pay to the plaintiff such sum, not exceeding $5,000, the amount of the bond. To this complaint the defendant demurred upon the grounds that the court had no jurisdiction of the subject of the action; that the plaintiff had no legal capacity to sue, because no order had been made permitting him to bring this action; that there was a defect of parties, in that the sisters of the said decedent, and his niece, being his next of kin, should have been made parties to the action; and that the complaint does not state facts sufficient to constitute a cause of action. The demurrer was overruled, and from the judgment entered upon that decision this appeal is taken.

The question as to the liability of the sureties upon an administrator's bond for alleged defaults of their principal has been several times presented in this court in recent cases, and the question, not only of the extent of that liability, but as to the parties necessary in an action brought to enforce it, has been thoroughly examined and decided. It has been determined in this court, in circumstances very like this, that an action might be brought by one of the next of kin of the intestate (Bischoff v. Engel, 10 App. Div. 240, 41 N. Y. Supp. 815), or by a creditor (Scharmann v. Schoell, 23 App. Div. 398, 48 N. Y. Supp. 306). These cases determine most of the questions that are presented upon this appeal. But it is said that the administrator de bonis non has no standing in court to maintain this action. This question, also, has been substantially decided by the

case of Walton v. Walton, 4 Abb. Dec. 512. That was an action by the administrator de bonis non, against the personal representative of an executor who had died without applying assets collected, to compel an accounting and delivery of such assets. The complaint was demurred to upon the ground that the facts did not constitute a cause of action, because the administrator de bonis non had no interest in the property of the testator which had come to the hands of the executor, and by him been converted into money. This contention was sustained by the supreme court, and judgment entered for the defendant upon the demurrer, which was affirmed at the general term; but upon appeal to the court of appeals the judgment was reversed, the court holding that whether the property remained in the hands of the original executor as uncollected assets, or whether the assets had been by him converted into money, they were still unadministered assets of the original estate, and, as such, the administrator de bonis non was entitled to recover them, as the representative of the estate of which he had been appointed administrator. The same principle which permits the administrator de bonis non to recover assets in the hands of the personal representative of the deceased executor is also operative to entitle him to maintain an action against the surety, under the authority of Bischoff v. Engel, supra, and Scharmann v. Schoell, supra. The defendant insists that these cases were not properly decided. But they were the subject of thorough examination, and were determined on careful consideration, and they must stand as the judgment of this court upon those questions.

The point that the next of kin of Terence A. Macaulay should have been made parties to this action is sufficiently answered by the case of Walton v. Walton, supra. The representative of the estate of Terence A. Macaulay, until it shall have been fully administered, is the administrator de bonis non; and all the rights of recovery which exist for the benefit of that estate are vested in him for the benefit of creditors, if there shall turn out to be any creditors, and if there are no creditors, as is alleged in the complaint, then for the benefit of the next of kin, who will receive the estate in due course of administration from the plaintiff.

As to the further objection that the plaintiff has not legal capacity to sue, because no order of the surrogate has been made granting him permission to bring an action, I am of the opinion that that objection is well taken, and that, therefore, the judgment cannot be sustained. The action is brought to recover the penalty of a bond under seal, running, in terms, to the people of the state of New York. The ordinary rule in such cases is that no persons can sue to enforce covenants contained in an instrument, except such as are parties to the instrument. Henricus v. Englert, 137 N. Y. 488, 33 N. E. 550. The bond in this case is one required by law, and is given for the benefit of all persons interested in the estate of Terence A. Macaulay, of which Daniel Macaulay was appointed administrator. The Code has prescribed the circumstances in which an action may be brought upon such a bond in nearly all cases that are likely to arise. Code Civ. Proc. §§ 2607–2609. While this

case is not one of those mentioned in either of those sections, yet they may be referred to for the purpose of ascertaining the policy of the law with regard to the manner of bringing such actions. Section 2607 provides for a case where by a decree of the surrogate the administrator has been required to pay a certain sum of money, and an execution has been issued against it upon that decree, and returned unsatisfied, in which case the statute prescribes that the plaintiff in the execution may bring an action upon the administrator's bond. Section 2608 refers to a case where letters have been revoked, and a new executor or administrator has been appointed, and provides that such new appointee may maintain an action upon the official bond to recover money or the full value of property received by the principal on the bond, and not administered by him. In such case it is held that the money so recovered is regarded as part of the estate, and must be administered upon as such. In neither of these cases is it necessary that permission should be obtained to sue upon the bonds. The reason of this is clear: In each of these cases there is but one person who has any right of action. The surety upon the bond cannot be subjected, by reason of any of the circumstances arising under either of those sections of the Code, to more than one action. For that reason, the only person who may sue upon the bond is ascertained as soon as the right of action arises, and there is no danger of the surety being vexed by more than one suit. Section 2609, however, provides for a case where the letters of an executor have been revoked, and no successor has been appointed, in which case it is provided that any person aggrieved may sue, upon obtaining an order from the surrogate granting him leave to do so. The person so suing is entitled to recover any money or the value of any other property received by the principal in the bond, and not administered by him, and to the full extent of any injury sustained by the estate of the decedent by any act or omission of the principal. The Code provides that the money recovered in such an action must be paid by the sheriff, or other officer who collects it, into the surrogate's court, and that the surrogate must distribute it to the creditors, or other persons entitled thereto. This section provides for a case where the right of action may be vested in any one of several persons. By whomsoever the action is brought, the surety is liable for the full extent of the defalcation of his principal, unless the same is beyond the penalty of his bond, and the rights of all parties interested in the estate are determined by the recovery of the single judgment. It is very proper, in such a case as that, that but one action should be permitted to be brought.

The case at bar is not within the express provisions of section 2609, for the reason that the letters of administration were not revoked, and the successor was appointed. But it is clearly within the reason there laid down, because the facts stated in the complaint in this action are such as would entitle the next of kin (Bischoff v. Engel, supra) or a creditor (Scharmann v. Schoell, supra) to sue. Either of these persons, upon bringing his action, would be entitled to recover the full amount of the penalty of the bond. If either

person brought the action originally, it would not be just to permit
it to be maintained by anybody else. If no leave of the surrogate
were required, the action might in the first instance be brought either
by each one of the creditors separately, or by one or all of the next
of kin, or by the administrator de bonis non, in which case the duty
of the court would be, clearly, either to consolidate the actions, or
to permit one to continue, and to stay proceedings upon all the
others. But such a course would necessarily result in considerable
inconvenience to the surety, who is not to be subjected to any greater
inconvenience because he is surety than is necessary to protect the
rights of the estate to which he must respond. There is every rea-
son, therefore, why any one who seeks to become a plaintiff in this
action for the benefit of all the rest should apply to the court for
leave to do so. When that is done, the court would be likely to
give leave to the person making the first application, if there were
no other person better entitled to sue. Were any subsequent ap-
plication to be made, the court, being put in possession of the fact
that an action had already been begun, would forbid leave; and in
that way but one suit would be brought, and that suit would be
within the control of the court, to a very considerable extent.

These reasons seem to me to be conclusive, as showing that it is
necessary, in a case of this kind, that the leave should be given
by the surrogate to bring the action. In the cases cited above where
the action was allowed to be maintained, this question was not pre-
sented. It was presented, however, in the case of Deposit Co. v.
Pratt, 25 Hun, 23, wherein it was held that the surrogate could
not order the bond to .be prosecuted because the executor had not
refused or omitted to perform any decree made against him by the
surrogate. But that case is of no force as an authority now, for
the reason that it is clearly to be inferred from section 2609 of the
Code of Civil Procedure that the surrogate has power to give an or-
der to prosecute the bond in cases where he has made no decree.
The case is within the provisions of section 1888 of the Code, which
declares that where a public officer is required to give an official
bond to the people, and special provision is not made for the prose-
cution of it by a person who has sustained injury by his default,
such a person may apply for leave to prosecute the delinquent's offi-
cial bond. This section of the Code clearly applies to this case, and
requires that the party seeking to prosecute this bond under the
circumstances set out in the complaint should obtain leave to that
end before he brings his action. Such a requirement is not new in
the law. At common law, in England, the bond of the administra-
tor was given to the Archbishop of Canterbury, and at common law,
of course, the action could only be brought in the name of the
obligee. Where it became necessary to sue upon the administrator's
bond, the usual course was for the action to be brought by the ag-
grieved person in the name of the obligee, after having obtained
permission from the ecclesiastical court so to do. 1 Williams, Ex'rs,
538. But, in a case where an action at law could not be main-
tained, it was held by the English court of chancery that it was in
the discretion of the ecclesiastical court to determine whether the

bond should be brought into the civil court or not. Parker v. Young, 6 Beav. 261. The master of the rolls in that case said:

"In the absence of all authority on the subject, it does not appear to me that any one can be a specialty creditor under a bond which he does not produce, which is not under his control, which was not executed by him or to his intestate, but was executed to a public officer, and remains subject to the judicial control of the ecclesiastical court, which has jurisdiction to determine whether the bond should be put in suit or not, and upon what terms."

In that case the administrator de bonis non, claiming to be a specialty creditor against the sureties upon the official bond because of the breach of its condition, brought a suit in the court of chancery against the sureties. He moved in that court that the ecclesiastical court where the bond was filed should produce it before the court of chancery, in order that the action might be maintained, and that the ordinary to whom the bond was given should be considered a trustee for the plaintiff in the suit. The question was directly presented, therefore, whether or not it was proper to bring an action of that kind, under just such circumstances as this, against the surety upon the official bond, without the consent of the court where that bond was filed. The case is authority for the conclusion which I have reached here. The same rule was substantially held in the case of Archbishop of Canterbury v. Tubb, 3 Bing. (N. C.) 789.

Upon the whole case, it clearly seems to me that such an action should not be maintained, unless the court has given leave for that purpose beforehand, and, that being so, I am quite clear that the complaint is defective, in not containing an allegation that leave was granted; and therefore the judgment should be reversed, and the demurrer sustained, upon the usual terms.