WRIGHT v. CLARK et al.

(Supreme Court, Special Term, Westchester County.    July 8, 1913.)

1. DEEDS (§ 211*)—VALIDITY—MENTAL CAPACITY.
    In an action to set aside a deed on the ground of the mental incapacity of the grantor, evidence *held* to show that the grantor was at that time incapable of executing a valid deed.
    [Ed. Note.—For other cases, see Deeds, Cent. Dig. §§ 637–647; Dec. Dig. § 211.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

2. CORPORATIONS (§ 428*)—NOTICE TO OFFICERS—NOTICE TO CORPORATION.

Where a husband, with knowledge of his wife's mental incapacity, and with intent to acquire her property, organized two corporations, which he controlled and of which he was president, to take conveyances from her, they were charged with notice of her incapacity.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 1748–1761; Dec. Dig. § 428.*]

3. WILLS (§ 289*)—EXECUTION—PRESUMPTION.

The law will not presume that a will was executed, but the subscribing witnesses should testify to that fact.

[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 653–661; Dec. Dig. § 289.*]

4. DESCENT AND DISTRIBUTION (§ 19*)—PRESUMPTION—INTESTACY.

A person is presumed to have died intestate until the contrary is proven.

[Ed. Note.—For other cases, see Descent and Distribution, Cent. Dig. §§ 11–13; Dec. Dig. § 19.*]

5. WILLS (§ 55*)—VALIDITY—ACTIONS—MENTAL CAPACITY.

In an action where the validity of a will came in issue, evidence *held* to show that the testatrix was mentally incapable.

[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 137–158, 161; Dec. Dig. § 55.*]

6. TRUSTS (§ 383*)—LIABILITY OF TRUSTEE'S BONDSMEN.

Where defendant, who married a woman mentally incompetent, in order to get her property, had himself made a substituted trustee of a trust consisting of a mortgage about to mature, and received payment in a check which he merely exhibited to his wife, but never paid to her or deposited to her credit, there was no payment of the trust, and the husband's bondsmen for the discharge of his duties as trustee were liable for the amount of such trust fund.

[Ed. Note.—For other cases, see Trusts, Cent. Dig. § 622; Dec. Dig. § 383.*]

7. DEEDS (§ 133*)—CONSTRUCTION—REMAINDERS.

Where a woman conveyed property in trust to apply the proceeds to her own use during life, and upon her death to convey the property to such persons as she might appoint to receive the same in her last will and testament, or, if there should be no will, to her heirs at law, her heirs at law then and there took a vested remainder, which was liable to be wholly divested, either by their previous decease or by the will of the testatrix.

[Ed. Note.—For other cases, see Deeds, Cent. Dig. §§ 368–371; Dec. Dig. § 133.*]

8. TRUSTS (§ 59*)—CONSTRUCTION—IRREVOCABLE TRUSTS.

Such trust is irrevocable except by the grantor's last will and testament.

[Ed. Note.—For other cases, see Trusts, Cent. Dig. §§ 78–81; Dec. Dig. § 59.*]

9. TRUSTS (§ 378*)—LIABILITY OF TRUSTEE—DEFENSES.

Where the grantor of a trust was insane when she created it, that fact is no defense to a proceeding against the trustee and his surety for misappropriation of the funds.

[Ed. Note.—For other cases, see Trusts, Cent. Dig. § 619; Dec. Dig. § 378.*]

10. TRUSTS (§ 384*)—LIABILITY OF TRUSTEE—LIABILITY OF TRUSTEE'S BONDSMEN.

Where a trustee misappropriated the trust funds, converting the whole amount, the cestui que trust being mentally incompetent, the liability of

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

his bondsmen may be fixed in an action to recover the amount without a formal accounting.

[Ed. Note.—For other cases, see Trusts, Cent. Dig. § 623; Dec. Dig. § 384.*]

Action by Joseph M. Wright against Arthur B. Clark and others. Judgment for plaintiff.

Ernest P. Hoes, of New York City, for plaintiff.

Edward Weiss, of New York City, for defendant Clark.

Edward M. Grout and Paul Grout, both of New York City, for People's Surety Co. of New York.

TOMPKINS, J. This action is brought by the plaintiff, who is the sole heir at law of Elizabeth V. A. Wright, deceased, to recover real property which he alleges was fraudulently obtained from said Elizabeth V. A. Wright by the defendant Arthur B. Clark, and subsequently conveyed by said Clark to the Arthur B. Clark Company, a corporation organized by said Clark for the purpose of holding and developing said property for his own benefit, and to recover a trust fund of $8,000, which was held by the said Arthur B. Clark as substituted trustee under a trust deed made by the said Elizabeth V. A. Wright, by which she conveyed an undivided one-half interest in certain real property in New York City to one Robert W. Bell, Jr., in trust to receive the rents and profits of said undivided one-half part, and to apply the same to the use of one Eva Van Vrederberg Wright during her lifetime, and upon her death to convey the said undivided one-half part to such person or persons as the said Elizabeth V. A. Wright might appoint to receive the same in her last will and testament, or, if there should be no will, to her heirs at law. The deed gave the trustee power to sell, and authorized him to invest the proceeds, "provided that on any sale thereof the proceeds of such sale shall stand in place of said undivided one-half part, and be subject to the same trusts and powers and ultimate disposition thereof." In 1907 this property was sold by the trustee. A part of the proceeds thereof consisted of a mortgage for $16,000 which was made to R. Walter Bell, as substituted trustee as to an undivided one-half, and to Robert W. Bell, Jr., as trustee as to the other undivided one-half. Robert W. Bell, Jr., continued to act as trustee under the deed by the said Elizabeth V. A. Wright until his death in 1908, and thereafter, in a proceeding in the Supreme Court, the defendant Arthur B. Clark was made substituted trustee, and qualified by giving a bond with the defendant the People's Surety Company of New York as surety. The mortgage was paid on January 8, 1909, and the defendant Arthur B. Clark, as such substituted trustee, received one-half of the proceeds, to wit, $8,000, and in this action the plaintiff seeks to recover that amount from the defendant Clark and his surety, the defendant the People's Surety Company of New York, claiming that the said Elizabeth V. A. Wright died without leaving a valid testamentary disposition of her estate, and that the said Arthur B. Clark converted the said $8,000 to his own use.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

[1] First, with reference to the real estate. Elizabeth V. A. Wright was 45 years of age at the time of her death, December 8, 1911. She had not been married until she married the defendant Arthur B. Clark in August, 1908. She first met Clark in October, 1907, in a New York City restaurant. She at that time lived at Mt. Kisco, in Westchester county, where she had lived practically all of her life until 1903, when she went to Cuba, and remained until 1907. She had always been more or less peculiar and eccentric, and at times had hallucinations and delusions that indicated mental unsoundness, which increased as she grew older, and culminated in her death by hanging by her own hand in an insane asylum in the state of New Jersey, where some time before she had been placed by her husband, the defendant Arthur B. Clark.

For years she pretended to believe in fortune telling, and always carried cards with her for the purpose of telling her own fortune. When she met the defendant Clark in 1907, he was running a clairvoyant office in New York City under the name of Prof. Charles F. Dale, and extensively advertised himself in New York daily papers as the "World's Renowned Clairvoyant, Psychic and Palmist," announcing that he possessed "wondrous powers of guidance" and "personal magnetism, and the power of psychic force," able to "remove all evil influences, and possessed of extraordinary clairvoyant powers, combined with the superior knowledge of occult forces, enabling him to read human life with accuracy from infancy to old age. His powers are wonderfully indisputable, his advice reliable, his information clear, the only clairvoyant in the world who will give you a written guarantee; who will teach you to fascinate any one you desire, how to make your enemies your friends, how to cause a speedy marriage with the one of your choice." In other advertisements he characterized himself as the "world's greatest clairvoyant, Professor Charles F. Dale." He especially emphasized the value of his advice and services in matters of love and marriage, and stated that he had been a professional clairvoyant for 16 years, although as a witness in this action he testified that he was only in the business for one year, and confessed that he had possessed none of the powers advertised.

The influence that this man exerted over Miss Wright by reason of his alleged occult powers, both before and after her marriage to him, is quite apparent from statements that she made to two disinterested witnesses, to the effect that the stars and other celestial signs pointed Clark out to her as her future husband, at which time she seemed to be in a state of extreme ecstacy. Two months before her marriage, she executed and delivered to the defendant Clark a deed of parcels 1 and 2, which, it is claimed by him, was made in contemplation of their marriage, and as a wedding gift or settlement. It was drawn by the defendant's lawyer, and recorded four days before their marriage; and, in order to divest his wife of any dower interest, he organized the Arthur B. Clark Company, and in July, before his marriage, had the premises conveyed to said company. Besides getting title to all of her real estate, he got about $3,500 in cash from her previous to their marriage, and in May, 1909, he received about $4,000

from the plaintiff, who was the administrator of Thomas B. Wright, the father of Mrs. Clark, and in January, 1909, he received the trust fund of $8,000 already referred to, which he pretends his wife thereupon voluntarily gave him, without any suggestion on his part. In all the defendant admits that between the time he met Miss Wright, and the early part of 1909, he received in cash about the sum of $16,000 of her moneys, besides the deed for the real estate. He thereafter mortgaged the real estate for $6,500, and personally received the proceeds thereof.

Clark lived with his wife for a few months only after their marriage, and then, after getting practically all she had, abandoned her, and thereafter and down to his wife's death in 1911 lived a large part of the time with another woman as his mistress. After her abandonment she complained bitterly of her husband's treatment of her, and brought an action in equity to recover the real estate, and the lis pendens then filed has ever since prevented him from disposing of the same for his own benefit. While that action was pending, and when it was about to be brought to trial, the defendant Clark, with the assistance of his mistress, the woman with whom he was living in New York City, got control of Mrs. Clark, and stealthily removed her from a hospital, where she had been placed by her friends, and thereafter unduly influenced her to discontinue the action she had brought to recover her property. Her conduct at this time, and the papers she signed, and the letters she wrote, taken in connection with the letters she had previously written, complaining of her husband's treatment, and of his conduct in stripping her of her property, are all indicative of mental unsoundness. Thereafter her friends and former attorney, who had all through acted honorably, and for her best interests, instituted a proceeding to have her declared an incompetent person, and for the appointment of a committee of her person and property. This proceeding Mrs. Clark ostensibly, under the influence and tutelage of her husband and his mistress, defended, and many hearings were had, which Mrs. Clark attended, accompanied by her husband and his mistress. (It appeared by the defendant's testimony that during a part of this period he and his wife and mistress were occupying the same apartment, the wife occupying a room by herself, and the defendant and his mistress occupying another.) These proceedings finally ended in a finding by a jury on May 26, 1911, that Mrs. Clark was insane, and unable to manage her affairs, and thereupon Arthur I. Strang, Esq., was appointed her committee. He qualified, but owing to subsequent proceedings to vacate the finding of the jury, and for a rehearing he never had possession of any of her property, or commenced any proceeding to recover it. In August, 1911, the defendant Clark sent his wife, in charge of his mistress, to a sanatorium for nervous and insane persons at Plainfield, N. J., and there she remained until she committed suicide on December 8, 1911.

The story of the life of this unfortunate woman, from the time she met the defendant Clark until her tragic death, is pathetic indeed. She was robbed of her property, abandoned, cruelly neglected, and brutally treated from about three months after her marriage un-

til the date of her death. Her money and property were her only attractions, and as soon as the defendant succeeded in getting all she had his abuse and neglect began, and continued until the time drew near for the trial of her suit against him to recover her real estate, and then he cunningly devised a way of getting her away from her faithful attorney and devoted and loyal relatives and friends, and thereafter she was completely under his domination and that of his mistress, and kept under their control practically a prisoner away from her true friends, and the few relatives she had, until her death.

The proof shows that from the defendant's introduction to the woman in 1907 he schemed to obtain her property and money, and without much apparent effort succeeded. The conveyance of the real estate was fraudulently obtained, and the moneys that he got from his fiancée and wife were obtained by means of deceit and duplicity. She by reason of her weak mental condition was an easy victim of this scheming and unscrupulous man. I am satisfied from the evidence that at the time of her marriage and down to the date of her death she was of unsound mind and incapable of entering into a marriage contract, and unable in law of disposing of her property, or making a valid testamentary disposition thereof; and that the real estate in question was obtained from her by the defendant Clark by means of fraud and deceit, and without valuable or lawful consideration; and that the deeds of June 15, 1908, and May 19, 1910, should be set aside.

[2] The defendants Newcastle Stone Company and the Arthur B. Clark Company must be regarded as having had notice of the fraud and of Mrs. Clark's mental condition. Both companies were organized by Clark, and he was president of each, and in control of them.

[3, 4] The paper purporting to be the last will and testament of Mrs. Clark, dated October 2, 1908, was a part of the defendant Clark's corrupt scheme to get absolute control of his wife's property. There is no evidence of its due execution. The subscribing witnesses were not examined as witnesses on this trial, and the law does not presume that it was duly executed. A person is presumed to have died intestate until the contrary is proven. Mitchell v. Thorne, 134 N. Y. 541, 32 N. E. 10, 30 Am. St. Rep. 699.

[5] The mental incapacity of Mrs. Clark at the time of the execution of the alleged will of September 8, 1910, was clearly shown upon this trial by the proof of her general condition, as well as by the testimony of the subscribing witnesses to that paper.

[6] As to the trust fund. Clark had himself made substituted trustee, and gave a bond, executed by the People's Surety Company of New York as surety. He received $8,000 as such substituted trustee, the income of which belonged to his wife during her lifetime, and, upon her death without leaving a will, to her heirs at law. Inasmuch as she left no valid will, the plaintiff is entitled to the fund as her heir at law, with interest thereon from the date of her death, December 8, 1911. That Clark received the money and converted it to his own use is not disputed, but the claim is made on behalf of

142 N.Y.S.—52

the defendant Clark and the Surety Company that the trust was one which Mrs. Clark was at liberty to terminate at any time, and that it was in fact terminated by her in January, 1909, when it is claimed she was paid the full amount of the principal of the trust fund, and executed a general release, but the trouble with this claim is that as a matter of fact the money was not paid to her, but was received by Clark within a few days after he qualified as substituted trustee, and retained and used by him for his own purposes; while the alleged release was obtained from her by the same dishonest means, used by him in getting her other property and for the same fraudulent purposes. It was by means of undue influence and Mrs. Clark's impaired mental condition that Clark had himself appointed substituted trustee, and he thereupon as soon as possible converted the entire fund to his own use. His claim that he paid the money over to her was shown by his own examination at the trial to have been untrue. He simply exhibited to her a check according to his own testimony, and it was never in her hand, and never deposited to her credit. He put it in his own bank account, and used it for his own purposes, and fraudulently got her to sign the alleged release.

[7] If the Surety Company is not liable under such circumstances, there is nothing to be gained by requiring a trustee to give a bond. It is doubtful, even if there had been no fraud in connection with the release, and the money had actually been given to Clark, whether it would be a defense in this action. The original trust deed put the legal title in Bell the trustee. The remainder after the trust for Mrs. Wright's life was in such persons as might be her heirs at law upon her death, and each such person who would be one of her heirs at law, in case of her death, at any particular time, had then a vested remainder in the principal of the trust, which was liable to be wholly divested by his death before her death, or to be partially divested by an increase in the number of heirs at law, and the fact that the trust was created by Mrs. Wright herself does not seem to change the rule or make the interests of the remaindermen less absolute. Real Property Law, § 100; Moore v. Littel, 41 N. Y. 66; Real Property Law, § 54; Genet v. Hunt, 113 N. Y. 158, 21 N. E. 91.

[8] The trust then was absolute and irrevocable, except by a valid last will and testament. Hamlin v. Hamlin, 192 N. Y. 164, 84 N. E. 805; Culross v. Gibbons, 130 N. Y. 447, 29 N. E. 839; Real Property Law, § 57.

[9, 10] The claim is made on the part of the Surety Company that the trust was void because Mrs. Clark was insane at the time she made the deed in 1905. This, I think, is untenable. The most that can be said, assuming that she was insane at that time, is that the trust deed would have been voidable at her own option, had she recovered her sanity, but surely the trustee cannot urge that fact in defense of his own misconduct in appropriating the entire trust fund to his own use; nor can his surety for that reason escape liability on its bond, and I think its liability may be established by a judgment in this action, without an accounting, as a condition precedent, and without an order granting leave to bring this action. Dunne v. American

Surety Co.,.43 App. Div. 91, 59 N. Y. Supp. 429; Girvin v. Hickman, 21 Hun, 316; Long v. Long, 142 N. Y. 545, 37 N. E. 486; Russell H. & I. Manufacturing Co. v. Utica Drop Forge Co., 195 N. Y. 54, 87 N. E. 788; Satterlee v. Kobbe, 173 N. Y. 97, 65 N. E. 952.

The plaintiff is entitled to judgment annulling the marriage, setting aside the deeds and wills, and against the Trust Company for the amount converted by the trustee, with costs.